**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| POVILAS KARCAUSKAS, individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>      v.<br><br>REGRESO FINANCIAL SERVICES, LLC, <u>et</u> <u>al.</u>,<br><br>             Defendants. | Case No. CV 15-9225 FMO (ASx)<br><br>**ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS** |

Having reviewed and considered all the briefing filed with respect to plaintiff's Unopposed Motion for Class Certification and Preliminary Approval of Settlement Agreement (Dkt. 112, "Motion"), and the oral argument presented to the court, the court concludes as follows.

## BACKGROUND

On November 30, 2015, plaintiff Povilas Karcauskas ("plaintiff" or "Karcauskas") filed a class action complaint against defendants Regreso Financial Services LLC ("Regreso"); Goldsmith & Hull, APC ("Goldsmith & Hull"); and William I. Goldsmith ("Goldsmith") (collectively, "defendants"),[1] asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

---

[1] On March 1, 2018, the court granted the unopposed motion to dismiss plaintiff's individual and class claims as to Regreso. (<u>See</u> Dkt. 111, Court's Order of March 1, 2018, at 6). Thus, the

§§ 1692, et seq., and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civil Code §§ 1788.10, et seq.  (See Dkt. 1, Complaint at ¶ 24.  In pertinent part, plaintiff alleges that he received a debt collection letter: (1) incorrectly naming a creditor with no involvement in collecting the subject debt, (see id. at ¶ 18); and (2) seeking to collect a debt on behalf of an entity that was suspended by the California Secretary of State.  (See id. at ¶¶ 12-14).

In the instant Motion, plaintiff seeks an order: (1) certifying the proposed class for settlement purposes; (2) preliminarily approving the settlement; (3) appointing the class representative and class counsel; (4) appointing the settlement administrator; (5) approving the notice documents and directing dissemination of the class notice; and (6) scheduling a final approval hearing.  (See Dkt. 112, Motion at 9).

## **LEGAL STANDARD**

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

I.    CLASS CERTIFICATION.

At the preliminary approval stage, the court "may make either a preliminary determination that the proposed class action satisfies the criteria set out in Rule 23[2] or render a final decision as to the appropriateness of class certification."  Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149, *3 (S.D. Fla. 2010) (internal citation omitted); see also Sandoval v. Roadlink USA Pac., Inc., 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997)) ("Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]").  "A court considering such a request should give the Rule 23 certification factors 'undiluted, even heightened, attention in the settlement context.'"  Sandoval, 2011 WL 5443777, at *2 (quoting Amchem, 521 U.S. at 620, 117 S.Ct. at

---

reference to defendants shall be to Goldsmith & Hull and Goldsmith.

[2]   All "Rule" references are to the Federal Rules of Civil Procedure.

2248). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Amchem, 521 U.S. at 620, 117 S.Ct. at 2248.

A party seeking class certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011). Rule 23(b) is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1)-(3).

The party seeking class certification bears the burden of demonstrating that the proposed class meets the requirements of Rule 23. See Dukes, 564 U.S. at 350, 131 S.Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). However, courts need not consider the Rule 23(b)(3) issues regarding manageability of the class action, as settlement obviates the need for a manageable trial. See Morey v. Louis Vuitton N. Am., Inc., 2014 WL 109194, *12 (S.D. Cal. 2014) ("[B]ecause this certification of the Class is in connection with the Settlement rather than litigation, the Court need not address any issues of manageability that may be presented by certification of the class proposed in the Settlement Agreement."); Rosenburg v. I.B.M., 2007 WL 128232, *3 (N.D. Cal. 2007) (discussing "the elimination of the need, on account of the Settlement, for the Court to consider any potential trial manageability issues that might otherwise bear on the propriety of class certification").

II.     FAIRNESS OF CLASS ACTION SETTLEMENT.

Rule 23 provides that "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." In re Syncor ERISA Litig., 516 F.3d 1095, 1101-02 (9th Cir. 2008) (quoting Officers for Justice v. Civil Service Comm'n of the City & Cnty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982), cert. denied 459 U.S. 1217 (1983)). Accordingly, a

district court must determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959; see Fed. R. Civ. Proc. 23(e).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.), cert. denied, Hoffer v. City of Seattle, 506 U.S. 953 (1992) (internal quotation marks and citation omitted).

"If the [settlement] proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2). "[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness [given t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative[.]"  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  As the Ninth Circuit has observed, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement.  Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

Approval of a class action settlement requires a two-step process – a preliminary approval followed by a later final approval.  See West v. Circle K Stores, Inc., 2006 WL 1652598, *2 (E.D. Cal. 2006) ("[A]pproval of a class action settlement takes place in two stages."); Tijero v. Aaron Bros., Inc., 2013 WL 60464, *6 (N.D. Cal. 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process.").  At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval."  Wright v. Linkus Enters., Inc., 259 F.R.D. 468, 472 (E.D. Cal. 2009).  Although "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the amount of time, money and resources involved in, for example, sending out new class notices – should be good enough for final approval."  Spann v. J.C. Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016).  "At this stage, the court may grant preliminary approval of a settlement and

direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Id. (internal quotation marks omitted); Harris, 2011 WL 1627973, at *7 (same); Cordy v. USS-Posco Indus., 2013 WL 4028627, *3 (N.D. Cal. 2013) ("Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotation marks omitted).

## DISCUSSION

I.   CLASS CERTIFICATION.

    A.   Rule 23(a) Requirements.

        1.   **Numerosity**.

The first prerequisite of class certification requires that the class be "so numerous that joinder of all members is impractical[.]"  Fed. R. Civ. P. 23(a)(1).  Although impracticability does not hinge only on the number of members in the putative class, joinder is usually impracticable if a class is "large in numbers."  See Jordan v. Cnty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on other grounds, 459 U.S. 810 (1982) (class sizes of 39, 64, and 71 are sufficient to satisfy the numerosity requirement); Jimenez v. Domino's Pizza, Inc., 238 F.R.D. 241, 247 (C.D. Cal. 2006) (same).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21."  Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 473 (C.D. Cal. 2012) ("A proposed class of at least forty members presumptively satisfies the numerosity requirement.").

Here, the members of the class are so numerous that joinder of all members is impracticable.  According to defendants' records, there are approximately 1,072 settlement class members.  (See Dkt. 112, Motion at 14; Dkt. 112-4, Declaration of Michael Goldsmith ("Goldsmith Decl.") ¶ 5).

2. **Commonality**.

The commonality requirement is satisfied if "there are common questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). Commonality requires plaintiff to demonstrate that his claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted). "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013), cert. denied, 135 S.Ct. 53 (2014) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact"). Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3). See Mazza, 666 F.3d at 589. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

This case involves the sending of a form collection letter to the class members. (See Dkt. 112, Motion at 14). The significant common question is whether the letter violated the FDCPA and the RFDCPA by making false and misleading representations. (See id. at 14-15); 15 U.S.C. § 1692e; Cal. Civ. Code § 1788; Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1029 (9th Cir. 2012) ("The seminal issue in this case is whether Mickell violated the FDCPA when he sent debt collection letters addressed to the debtor, but in 'care of' the debtor's employer, without first obtaining consent. That claim is a common contention among the class and 'determination of its

truth or falsity' is pivotal to this lawsuit and is capable of determination 'in one stroke' . . . [and t]he class members here have all suffered the same injury—they received a debt collection letter at their place of employment without first giving their consent, in violation of the FDCPA.") (quoting Wal-Mart, 564 U.S. at 349, 131 S.Ct. at 2551); Yang v. Assisted Credit Servs., Inc., 2016 WL 10459417, *3 (C.D. Cal. 2016) ("Plaintiff's claims all relate to whether the contents of a debt collection letter violates the FDCPA and the RFDCPA. Plaintiff alleges that every member of the class received the 'same or similar' letter.  Accordingly, Plaintiff and the class members' claims involve common legal questions.") (international citation omitted).  In short, the litigation involves common class-wide issues that are apt to drive the resolution of plaintiff's claims.  See, e.g., Shelton v. Hal Hays Constr., Inc., 2017 WL 1439683, *3 (C.D. Cal. 2017) (finding commonality requirement satisfied where common question was whether defendant violated FCRA by using certain forms); Kirchner v. Shred-It USA, Inc., 2015 WL 1499115, *3 (E.D. Cal. 2015) ("Whether these forms complied with § 1681b(b)(2) is a question common to all class members. Class members would also face the common question of whether Shred-it 'willfully' failed to comply with § 1681b(b)(2)'s requirement.  These questions of law are therefore applicable in the same manner to each member of the class, making class relief based on commonality appropriate.") (citations omitted); Milbourne v. JRK Residential Am., LLC, 2014 WL 5529731, *5 (E.D. Va. 2014) ("[Defendant] has admitted that it has used a standardized waiver and disclosure form for all class members, including [plaintiff]. Thus, if [plaintiff] is able to establish that [defendant's form] did not satisfy Section 1681b(b)(2)'s requirements this issue will be resolved not only in [plaintiff's] favor, but in the favor of all class members.  Thus, the legality of the forms is of 'such a nature that it is capable of classwide resolution' and satisfies the commonality requirement[.]").

3. **Typicality**.

"Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted).  To demonstrate typicality, plaintiff's claims must be "reasonably co-extensive with those of absent class members[,]" although "they need not be substantially identical."  Hanlon, 150 F.3d at 1020; see

Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the class."). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." Ellis, 657 F.3d at 984 (internal quotation marks and citation omitted).

Here, the claims of the representative plaintiff are typical of the claims of the class. Plaintiff's claims arise from the same nucleus of facts as the class and are based on the same legal theory, i.e., defendants violated the FDCPA and the RFDCPA by sending class members the same collection letter as plaintiff. (See Dkt. 112, Motion at 15); see, e.g., Yang, 2016 WL 10459417, at *3 ("Plaintiff's claims relate to the same or similar collection letter that the class members received. Thus, Plaintiff's claims challenging Defendants' letters are typical, if not identical, to those of the class."); Brown v. NFL Players Ass'n., 281 F.R.D. 437, 442 (C.D. Cal. 2012) (typicality satisfied where plaintiff's claims were based on "the same event or practice or course of conduct that [gave] rise to the claims of other class members and . . . are based on the same legal theory") (internal quotation marks omitted). Additionally, the court is not aware of any facts that would subject the class representative "to unique defenses which threaten to become the focus of the litigation." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted).

4.   **Adequacy of Representation**.

"The named Plaintiff[] must fairly and adequately protect the interests of the class." Ellis, 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)). "To determine whether [the] named plaintiff[] will adequately represent a class, courts must resolve two questions:  (1) do[es] the named plaintiff[] and [his] counsel have any conflicts of interest with other class members and (2) will the named plaintiff[] and [his] counsel prosecute the action vigorously on behalf of the class?" Id. (internal quotation marks and citation omitted). "Adequate representation depends on, among other factors, an absence of antagonism between [the] representative[] and absentees, and a sharing of interest between [the] representative[] and absentees." Id.

Here, the proposed class representative does not appear to have any conflicts of interest

with the absent class members.  As plaintiff states, he "understand[s] that as a class representative [he] ha[s] the responsibility to see that the lawyers prosecute the case on behalf of the entire class, not just [him]." (Dkt. 112-5, Declaration of Povilas Karcauskas ("Karcauskas Decl.") at ¶ 9).  Under the circumstances, "[t]he adequacy-of-representation requirement is met here because Plaintiff[ has] the same interests as the absent Class Members[.]  Further, there is no apparent conflict of interest between the named Plaintiff['s] claims and those of the other Class Members' – particularly because the named Plaintiff[ has] no separate and individual claims apart from the Class." Barbosa v. Cargill Meat Sols. Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013).

Finally, plaintiff's counsel requests, and the Settlement Agreement provides, that the court appoint as class counsel Robert Stempler ("Stempler") of the Consumer Law Office of Robert Stempler, APC, and O. Randolph Bragg ("Bragg") of Horwitz, Horwitz & Associates. (See Dkt. 112, Motion at 16).  Stempler states that he has been appointed to leadership positions in numerous class actions under the FDCPA. (See Dkt. 112-3, Declaration of Robert Stempler ("Stempler Decl.") at ¶¶ 25-33).  For instance, he was appointed co-lead counsel with Bragg in Doxtader v. Transworld Systems, 99 CV 1563 TW (LSP) (S.D. Cal.) and Justice v. National Check Trust, Inc., CV 02 04908 PA (RNBx) (C.D. Cal). (Id. at ¶¶ 26-27).  Bragg states that he has been "involved in numerous consumer cases" and in November 2006, he was named Consumer Attorney of the Year by the National Association of Consumer Advocates. (See Dkt. 112-2, Declaration of O. Randolph Bragg at ¶¶ 10 & 14-16).  Based on counsel's representations, the court finds that plaintiff's counsel are competent, and that the adequacy of representation requirement is satisfied. See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.").

B.     Rule 23(b) Requirements.

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal quotation marks omitted).  The rule requires two different inquiries, specifically a determination as to whether (1) "questions of law or fact common to class members predominate over any

questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); see Spann, 314 F.R.D. at 321-22.

 1.   **Predominance**.

"The Rule 23(b)(3) predominance inquiry tests whether [the] proposed class[ is] sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623, 117 S.Ct. at 2249. "Rule 23(b)(3) focuses on the relationship between the common and individual issues.  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  Hanlon, 150 F.3d at 1022 (internal quotation marks and citations omitted); see In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009) ("[T]he main concern in the predominance inquiry . . . [is] the balance between individual and common issues.").  Additionally, the class damages must be sufficiently traceable to plaintiff's liability case.  See Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1433 (2013).

For the reasons discussed above, see supra at § I.A.2., the court is persuaded that common questions predominate over individual questions.  Here, the single, overwhelming common question of whether defendants violated the FDCPA and RFDCPA by making misrepresentations in the collection letter sent to the putative class members predominates over any individual questions. See, e.g., Durham v. Cont'l Cent. Credit, 2010 WL 2776088,*5 (S.D. Cal. 2010) ("Plaintiff and the proposed class members were sent the Exhibit B letter within 30 days of having been sent the Exhibit A letter, raising the legal claim of overshadowing in violation of 15 U.S.C. § 1692g(b). These common and central issues predominate over any questions affecting only individual members.").  Finally, the relief sought applies to all class members and is traceable to plaintiff's liability case.  See Comcast, 133 S.Ct. at 1433.

 2.   **Superiority**.

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case" and

"necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023. Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority. See Fed. R. Civ. P. 23(b)(3)(A)-(D).

The first factor considers "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). "This factor weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation." Barbosa, 297 F.R.D. at 444. Here, plaintiff does not assert claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member. (See, generally, Dkt. 1, Complaint). The alternative method of resolution is individual claims for a relatively modest amount of damages, but such claims would likely never be brought, as "litigation costs would dwarf potential recovery." Hanlon, 150 F.3d at 1023; see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. Thus, class certification is also the superior method of adjudication."); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011), reconsideration denied, 280 F.R.D. 540 (2012) ("Given the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action."); Schwarm v. Craighead, 233 F.R.D. 655, 664 (E.D. Cal. 2006) (finding FDCPA class action superior to individual claims because "[n]ot only are most individual consumers unaware of their rights under the FDCPA, but also the size of the individual claims is usually so small there is little incentive to sue individually") (internal quotation marks omitted). In short, "there is no evidence that Class members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so." Munoz v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

The second factor to consider is "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). Here, there is no indication that any class member is involved in any other litigation concerning the claims in

this case.  (See Dkt. 112, Motion at 18) ("the parties are unaware of any competing litigation regarding the claims at issue").

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum[,]" Fed. R. Civ. P. 23(b)(3)(C), and the fourth factor relates to "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(D).  As noted above, "[i]n the context of settlement . . . the third and fourth factors are rendered moot and are irrelevant." Barbosa, 297 F.R.D. at 444; see Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (internal citation omitted).

The only factor in play here weighs in favor of class treatment.  Further, the filing of separate suits by several thousand class members "would create an unnecessary burden on judicial resources."  Barbosa, 297 F.R.D. at 445.  Under the circumstances, the court finds that the superiority requirement is satisfied.

## II.    FAIRNESS, REASONABLENESS, AND ADEQUACY OF THE PROPOSED SETTLEMENT.

### A.    The Settlement is the Product of Arm's-Length Negotiations.

"This circuit has long deferred to the private consensual decision of the parties." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).  The Ninth Circuit has "emphasized" that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Id. (internal quotation marks omitted).  When the settlement is "the product of an arms-length, non-collusive, negotiated resolution[,]" id., courts afford the parties the presumption that the settlement is fair and reasonable.  See Spann, 314 F.R.D. at 324; In re Netflix Privacy Litig., 2013 WL 1120801, *4 (N.D. Cal. 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive

arms' length negotiations conducted by capable and experienced counsel.").

Here, there is no evidence of collusion or fraud leading to, or taking part in, the settlement negotiations between the parties. Indeed, the parties vigorously litigated the instant action. For instance, the parties engaged in highly contested discovery, which included about 74 interrogatories, 278 requests for admission, and 209 requests for production of documents. (See Dkt. 112-3, Stempler Decl. at ¶ 8). In addition to several motions to compel, (see Dkts. 60-63), a motion to strike, (see Dkt. 45), and a motion for class certification was filed. (See Dkt. 84).

On September 25, 2017, the parties participated in a day-long mediation with the Honorable William McCurine (Ret.), which resulted in a mediator's proposal that was accepted by the parties a few days later. (See Dkt. 112, Motion at 10). At the time of settlement, plaintiff's motion for class certification (Dkt. 84) was pending, (see Dkt. 87), and prior to the mediation, the parties had exchanged their motions for summary judgment, but had not yet filed them. (See Dkt. 112, Motion at 9).

Based on the record before the court, the court is persuaded that the parties thoroughly investigated and considered their own and the opposing parties' positions. The parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement is "the product of fraud or overreaching by, or collusion between, the negotiating parties[.]" Rodriguez, 563 F.3d at 965 (quoting Officers for Justice, 688 F.2d at 625).

    B.    <u>The Amount Offered in Settlement Falls Within a Range of Possible Judicial Approval and is a Fair and Reasonable Outcome for Class Members</u>.

        1.    **Recovery for Class Members.**

The parties have defined the settlement class as "(i) all persons having an address within the state of California (ii) who were sent a communication from Defendants Goldsmith & Hull or William I. Goldsmith in the form of Exhibit A (attached to the Complaint) (iii) when a wage garnishment order had not been obtained (iv) to recover a debt incurred for personal, family, or household purposes (v) which was not returned undelivered by the United States Postal Service (vi) during the period of time one year prior to the filing of the Complaint through Preliminary

Approval Date."  (Dkt. 112-3, Settlement Agreement at § III.B.1; Dkt. 112, Motion at 10).

The relief available to the class, which involves 1,072 class members, will come from a non-reversionary $20,000 settlement fund, on a pro rata basis.  (See Dkt. 112-3, Settlement Agreement at § IV.B; Dkt. 112, Motion at 10; Dkt. 112-4, Goldsmith Decl. at ¶ 5) (A report generated on defendants' collection software that showed all files with a judgment, where a letter was sent from November 30, 2014 to the present, was reviewed by Goldsmith, revised to exclude unrelated subrogation and duplicate files and those with addresses outside of California).  The settlement "amount equal[s] . . . approximately 1% of [Goldsmith & Hull and Goldsmith's] net worth[.]"  (See Dkt. 112-3, Settlement Agreement at § IV.B).  Plaintiff estimates that class members will each receive approximately $18.66. (See Dkt. 112, Motion at 11).  Any unpaid sums will be treated as cy pres and given to (a) the National Consumer Law Center and/or (b) the National Association of Consumer Advocates.  (See Dkt. 112-3, Settlement Agreement at § IV.B). Defendants will separately pay plaintiff's attorney's fees and costs, subject to the court's approval, (see id. at § V), as well as the costs of the settlement administrator, not to exceed $10,000.  (See id. at § VII).

The settlement is fair, reasonable, and adequate, particularly when viewed in light of the litigation risks in this case.  Plaintiff acknowledges "the risks involved" in continuing the litigation, particularly with respect to defendants' arguments regarding typicality, standing, Goldsmith's exemption under the RFDCPA, see Cal. Civ. Code § 1788.2(c) ("debt collector" "does not include an attorney or counselor at law"), and the limited liability available under the FDCPA, see 15 U.S.C. § 1692k(a)(2)(B).[3]  (See Dkt 112, Motion at 23).   In short, the risks of continued litigation are significant in this case and when taking into account the costs and delays associated with continued litigation, the court is persuaded that the settlement's benefits to the class fall within the

---

[3] Recovery in FDCPA class actions is limited to $1,000 statutory damages for each named plaintiff, and the lesser of $500,000 or one percent of the net worth of the "debt collector" defendant.  See 15 U.S.C. § 1692k(a)(2)(B); Schuchardt v. Law Office of Rory W. Clark, 2016 WL 232435, *10 (N.D. Cal. 2016) (holding that "net worth" for the purposes of the FDCPA means balance sheet net worth, not fair market net worth including goodwill) (citing Sanders v. Jackson, 209 F.3d 998, 1000 (7th Cir. 2000)); Harper v. Law Office of Harris & Zide LLP, 2017 WL 995215, *4 (N.D. Cal. 2017).

range of reasonableness.  The average recovery amount of approximately $18.66, (see id. at 11), is within the range awarded in other settlements under the FDCPA.  See, e.g., Harper v. Law Office of Harris & Zide LLP, 2017 WL 995215,*4 (N.D. Cal. 2017) ("Each class member will receive $10.") (citing Schuchardt v. Law Office of Rory W. Clark, 314 F.R.D. 673, 684 (N.D. Cal. 2016) (approving class action settlement awarding $15.10 per class member "where Plaintiffs' potential recovery [was] limited by Defendant's more modest net worth.")); Knutson v. Schwan's Home Serv., Inc., 2014 WL 3519064, *4 (S.D. Cal. 2014) (preliminarily approving settlement in which maximum benefit to class members was $20 and an $80 voucher and collecting cases with $20-$100 in estimated recovery per class member); Sullivan v. Am. Exp. Publ'g Corp., 2011 WL 2600702, *7 (C.D. Cal. 2011) ("The Settlement Agreement allows class members to choose from between a cash award of $27.50 or a one-year magazine subscription, valued between $29.95 and $59.88, subject to a cap on all cash payments of $180,000."); see also Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks and citation omitted).

   2. **Release of Claims**.

  Beyond the value of the settlement, potential recovery at trial, and inherent risks in continued litigation, courts also consider whether a class action settlement contains an overly broad release of liability.  See 4 Newberg on Class Actions § 13:15, at 326 (5th ed. 2014); see, e.g., Fraser v. Asus Comput. Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis," without the establishment of a settlement fund or any other benefit to the class).

  Here, plaintiff and class members who do not exclude themselves from the settlement will release defendants from "any and all claims that were raised in this lawsuit pursuant to the [FDCPA] and [RFDCPA]."  (See Dkt. 112-3, Settlement Agreement at § IX.A).  With the understanding that, under the release, the settlement class members are not giving up claims

1    unrelated to those asserted in this action, the court finds that the release adequately balances

2    fairness to absent class members and recovery for plaintiffs with defendants' business interest in

3    ending this litigation.  See, e.g., Fraser, 2012 WL 6680142, at *4 (recognizing defendant's

4    "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the

5    need to prioritize "[f]airness to absent class member[s]").

6            C.      The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the

7                    Class Representative.

8            "Incentive awards are payments to class representatives for their service to the class in

9    bringing the lawsuit."  Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).

10   The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do

11   not undermine the adequacy of the class representatives."  Id.  The court must examine whether

12   there is a "significant disparity between the incentive awards and the payments to the rest of the

13   class members" such that it creates a conflict of interest.  See id. at 1165.  "In deciding whether

14   [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to

15   protect the interests of the class, the degree to which the class has benefitted from those actions,

16   and the amount of time and effort the plaintiff expended in pursuing the litigation."  Cook v. Niedert,

17   142 F.3d 1004, 1016 (7th Cir. 1998).

18           The Settlement Agreement provides for a payment to plaintiff Karcauskas of $2,000 in

19   "statutory damages pursuant to the FDCPA and the RFDCPA[,]" (see Dkt. 112-3, Settlement

20   Agreement at § IV.A.), as well as "$5,000 for his services as the class representative[,]" (see id.

21   at § VI), for a total of $7,000.  As an initial matter, there is no indication that the settlement will not

22   go forward if the court declines to award any or some of the requested incentive or statutory

23   awards.  In other words, there appears to be no apparent conflict of interest between the named

24   plaintiff and absent class members.  Cf. Radcliffe, 715 F.3d at 1163 (reversing approval of a class

25   action settlement because the conditional incentive awards caused the interests of the class

26   representatives to diverge from the interests of the class because the settlement agreement told

27   class representatives that they would not receive incentive awards unless they supported the

28   settlement").

In <u>Staton</u>, the court reversed the district court's approval of a class-action settlement where the incentive payments of up to $50,000 were disproportionately large when compared to class members' payments averaging $16,500 for one subclass, and $1,000 for another. <u>See</u> 327 F.3d at 948-49, 977. The <u>Staton</u> court cautioned that class representatives receiving special incentive awards "may be more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large." <u>Id.</u> at 977. In such cases, "the class representatives [may not] adequately represent the class." <u>Radcliffe</u>, 715 F.3d at 1164.

The <u>Staton</u> court, however, approvingly cited to <u>Cook v. Niedert</u>, 142 F.3d 1004, 1016 (7th Cir. 1998), in which the Seventh Circuit allowed an incentive payment of $25,000 "in the context of a recovery of more than $14 million[,]" where the plaintiff "spent hundreds of hours with his attorneys and provided them with 'an abundance of information[.]'" 327 F.3d at 976 (quoting <u>Cook</u>, 142 F.3d at 1016). <u>Staton</u> also cited favorably to <u>In re SmithKline Beckman Corp. Sec. Litig.</u>, 751 F.Supp.525, 535 (E.D. Pa. 1990), which approved "$5,000 awards for one named representative of each of nine plaintiff classes involving more than 22,000 claimants in a settlement of $22 million[.]" 327 F.3d at 977.

With this guidance in mind, the court must examine whether the award of $7,000 to plaintiff is unduly disproportionate compared to the total class award of $20,000, and the approximate individual awards of $18.66, (<u>see</u> Dkt. 112, Motion at 11), so as to create a conflict of interest. <u>See</u> <u>Radcliffe</u>, 715 F.3d at 1165. Further, "[i]n deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." <u>Cook</u>, 142 F.3d at 1016.

As an initial matter, plaintiff will receive a statutory award of $2,000.[4] Given the $2,000

---

[4] "While the Court initially found this additional award concerning, the FDCPA's compensation structure expressly allows this outcome." <u>See</u> <u>Harper</u>, 2017 WL 995215, at *4 (plaintiff received $1,000 in statutory damages in lieu of an incentive award); <u>Gomez v. Assocs. Grp.</u>, 2018 WL 6985242, *3 n. 2 (C.D. Cal. 2018) ("With respect to the Rosenthal Act, the court notes that other courts frequently grant the same amount of damages under that statute as for parallel FDCPA claims brought in the same litigation.").

1   statutory award, the court is persuaded that, under the circumstances here, an incentive award

2   of $5,000 is unduly disproportionate to the benefits likely to be received by the absent class

3   members.  The proposed award of $7,000 comprises about 26% percent of the total settlement

4   amount that will be awarded to the class members and constitutes a significant disparity between

5   the amount plaintiff will receive and the approximately $18.66 payments each class member will

6   receive.  Under the circumstances, the court will reduce the incentive award to $3,000,[5] resulting

7   in a total award for plaintiff of $5,000.  See, e.g., Cox v. Clarus Mktg. Grp., LLC, 291 F.R.D. 473,

8   483 (S.D. Cal. 2013) (court approved a $5,000 incentive award where class members would

9   receive a maximum payment of $36); see also Catala, 2010 WL 2524158, at *6 (approving $2,500

10  incentive payment to class representative, despite no monetary award to absent class members

11  in a settlement involving a cy pres recovery); Grant, 2014 WL 888665, at *4 & 8 (approving $5,000

12  incentive award in a class action in which only injunctive relief was provided).

13        D.    Class Notice and Notification Procedures.

14        Upon settlement of a class action, "[t]he court must direct notice in a reasonable manner

15  to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).   Federal

16  Rule of Civil Procedure 23(c)(2) requires the "best notice that is practicable under the

17  circumstances, including individual notice" of particular information.  See Fed. R. Civ. P.

18  23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

19        A class action settlement notice "is satisfactory if it generally describes the terms of the

20  settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

21

22        [5] Based on the amount of time spent and burden carried by the class representative, and
23  the benefits he provided to counsel and the class as a whole throughout the litigation, the court
    is persuaded that the $3,000 incentive payment is adequate .  See Cook, 142 F.3d at 1016.  The
24  class representative had his deposition taken, spent numerous hours reviewing written discovery,
    spent about three or four hours discussing the facts of the case with counsel, and spent time
25  preparing and being available during the settlement negotiations.  (See Dkt. 112-5, Karcauskas
    Decl. at ¶¶ 10-13).  Plaintiff was also "responsible for [his] pro rata share of all costs" prior to
26  settlement.  (See id. at ¶ 19).  In sum, plaintiff's evidence establishes that the incentive award is
    warranted based on his effort to "protect the interests of the class, the degree to which the class
27  has benefitted from those actions, and the amount of time and effort the plaintiff expended in
28  pursuing the litigation."  Cook, 142 F.3d at 1016.

forward and be heard." Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.), cert. denied, 543 U.S. 818 (2004) (internal quotation marks omitted).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir.), cert. denied, 544 U.S. 1044 (2005).  Settlement notices "are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." Gooch v. Life Inv'rs Ins. Co. of Am., 672 F.3d 402, 423 (6th Cir. 2012) (internal quotation marks omitted); see Wershba v. Apple Comput., Inc., 91 Cal.App.4th 224, 252 (2001) ("As a general rule, class notice must strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members."). The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to its terms.  See In re Integra Realty Resources, Inc., 262 F.3d 1089, 1111 (10th Cir. 2001) ("The standard for the settlement notice under Rule 23(e) is that it must 'fairly apprise' the class members of the terms of the proposed settlement and of their options.").

Here, the parties have selected First Class, Inc. as the Claims Administrator.  (See Dkt. 112-3, Settlement Agreement at § III.F).  Class members will receive notice by first class mail. (See Dkt. 112, Motion at 29; Dkt. 120-1, Revised Notice).  The Revised Notice describes the nature of the action, including the class claims. (See Dkt. 120-1, Revised Notice at 2); see Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii).  The class definition is conspicuously included on the Revised Notice, so that individuals clearly understand who is included.  (See Dkt. 120-1, Revised Notice at 3); see also Fed. R. Civ. P. 23(c)(2)(B)(ii).  It explains the benefits of the settlement, (see Dkt. 120-1, Revised Notice at 3), and that class members need not make a claim  to obtain benefits. (See id.).  It includes an  explanation laying out the class members' options under the settlement, i.e., they may exclude themselves, object, or do nothing.  (See id. at 3-5); see also Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).  The Notice explains that all class members who do not exclude themselves will release claims subject to the release provision.  (See Dkt. 120-1, Revised Notice at 6); see

also Fed. R. Civ. P. 23(c)(2)(B)(vii).  Also, if class members choose to object to the settlement, they may do so by submitting written objections to the court, and they may attend the final fairness hearing with or without an attorney.  (See id. at 4-5); see also Fed. R. Civ. P. 23(c)(2)(B)(iv). Information regarding the final approval hearing is also included.  (See Dkt. 120-1, Revised Notice at 4, 6).  Finally, the Revised Notice explains that class members may object to the attorney's fees award.  (See id. at 4-6).

Based on the foregoing, the court finds that there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members. The court further finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members.

E.    Summary.

In short, the court's preliminary evaluation of the settlement does not disclose grounds to doubt its fairness "such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, . . . or excessive compensation for attorneys[.]"  Manual for Complex Litigation § 21.632 (4th ed. 2004); see also Spann, 314 F.R.D. at 323.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.    Plaintiff's Motion for Class Certification and Preliminary Approval of Settlement Agreement **(Document No. 112)** is **granted** upon the terms and conditions set forth in this Order.

2.    The court preliminarily certifies the class, as defined in § III.B.1 of the Settlement Agreement (Document No. 112-3) for the purposes of settlement.

3.    The court preliminary appoints plaintiff Povilas Karcauskas as class representative for settlement purposes.

4.    The court preliminarily appoints Robert Stempler of Consumer Law Office of Robert Stempler and O. Randolph Bragg of Horwitz, Horwitz & Associates as class counsel for settlement purposes.

5.    The court preliminarily finds that the terms of the Settlement are fair, reasonable and

adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.  The proposed manner of the notice of settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.  The court approves the form, substance, and requirements of the class Notice (Dkt. 120-1).

8.  The parties shall carry out the settlement and claims process according to the terms of the Settlement Agreement.

9.  First Class, Inc. shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **April 5, 2019**.

10.  Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs and incentive award; or (b) exclude him or herself from the settlement must file his or her objection to the settlement or request for exclusion no later than **June 4, 2019**, in accordance with the Settlement Agreement, and Notice.

11.  Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs and incentive award, shall, no later than **June 4, 2019**, file with the court a Notice of Intent to Appear at Fairness Hearing.

12.  A final approval (fairness) hearing is hereby set for **August 22, 2019,** at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and service award to the class representative.

13.  Plaintiff shall file a motion for an award of class representative incentive payment and attorney's fees and costs no later than **May 3, 2019,** and notice it for hearing for the date set forth in paragraph 12 above.  Any objection to the motion for an award of class representative incentive payment and attorney's fees and costs, by class members, shall be filed by the deadline set forth in paragraph 10 above.  In the event any objections to the motion for an award of class representative incentive payment and attorney's fees and costs are filed, class counsel shall, no

later than **July 11, 2019,** file a reply addressing the objections.

14.  Plaintiff shall, no later than **July 18, 2019,** file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date set forth in paragraph 12 above.  Defendants may file and serve a memorandum in support of final approval of the Settlement Agreement or in response to objections no later than **July 25, 2019.**

15.  All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 8th day of February, 2019.


                                                        /s/
                                               Fernando M. Olguin
                                          United States District Judge