1   Robert Stempler, State Bar No. 160299
    Email: SoCalConsumerLawyer@Gmail.com
2   CONSUMER LAW OFFICE OF
    ROBERT STEMPLER, APC
3   8200 Wilshire Blvd, Suite 200
    Beverly Hills, CA 90211-2331
4   Telephone (323) 486-0102
    Fax: (323) 488-6895
5

6   O. Randolph Bragg, Attorney Admitted *Pro Hac Vice*
    Email: rand@horwitzlaw.com
7   HORWITZ, HORWITZ & ASSOCIATES
    25 East Washington Street, Suite 900
8   Chicago, Illinois 60602
    Telephone (312) 372-8822
9   Facsimile (312) 372-1673

10   Attorneys for Plaintiff

11

12                   UNITED STATES DISTRICT COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14

15   POVILAS KARCAUSKAS,                )   Case No. 2:15-cv-09225-FMO-RAOx
     on behalf of himself and all       )
16   others similarly situated,         )   CLASS ACTION
                                         )
17              Plaintiff,              )   PLAINTIFF POVILAS KARCAUSKAS'
                                         )   UNCONTESTED MOTION FOR AN
18        vs.                            )   AWARD OF CLASS REPRESENTATIVE
                                         )   INCENTIVE PAYMENT AND
19   GOLDSMITH & HULL, APC;             )   ATTORNEY'S FEES AND COSTS
     WILLIAM I. GOLDSMITH;              )
20   and DOES 1 to 10;                   )   Time: 10:00 AM
                                         )   Date: August 22, 2019
21              Defendants.             )   Place: Courtroom 6D (1st St Courthouse)
                                         )   Judicial Ofcr: Judge Fernando M. Olguin
22                                       )
                                         )
23                                       )
                                         )
24

25   ///

26   ///

27   ///

28   ///

- 1 -

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on the date and time noted in the caption above, or as soon thereafter as the matter may be heard, in Courtroom 6D of this court, inside of the United States Courthouse, addressed at 350 W. 1st Street, Los Angeles, California 90012, the plaintiff, Povilas Karcauskas ("Karcauskas" or "Plaintiff"), will move this Court for approval of an award of $5,000 for his services as the class representative and an award of Plaintiff's attorneys' fees and costs, in the amount of $200,000, pursuant to (a) 15 U.S.C. §1692k(a)(3), (b) Rule 23(h) of the Federal Rules of Civil Procedure, ( c) Order Re: Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class (Document No. 122, page 22, ¶ 13), and (d) the Settlement Agreement (Document No. 112-3). Defendants do not oppose this Motion.

This Motion is made and based upon the pleadings, documents, and Settlement Agreement on file herein, the attached Memorandum of Points and Authorities, and such evidence and argument as may be presented at the hearing on this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 10, 2017 and on January 18, 2018.

1

## Table of Contents

2    Notice of Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3    Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4    Memorandum of Points and Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5    I.     Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6    II.    Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7    III.   Statement of Questions Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

8    IV.    Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9           A.     The Court Has Discretion to Award an Incentive Payment. . . . . . . . 10

10          B.     Incentive Award Guidelines and Criteria Support a Greater than

11                 Average Award to Mr. Karcauskas. . . . . . . . . . . . . . . . . . . . . . . . . . 11

12          C.     Plaintiff Was Successful in this Action. . . . . . . . . . . . . . . . . . . . . . . 14

13          D.     Plaintiff's Attorneys Should Be Awarded Fees Pursuant to the Lodestar

14                 Formula. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

15          E.     Factors to Be Considered. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

16                 1.     Plaintiff's attorneys' fees and costs are reasonable given counsels'

17                        skills, experience and reputation. . . . . . . . . . . . . . . . . . . . . . . 18

18                 2.     Plaintiff's class action claims were novel and complex. . . . . 21

19                 3.     The fee is contingent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

20                 4.     Plaintiff's counsel could not spend the same time on both this

21                        case and other cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

22                 5.     The undesirability of the case. . . . . . . . . . . . . . . . . . . . . . . . . 22

23                 6.     Awards in Similar Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

24                 7.     Attorneys' Fee Award Is Not Limited by Amount

25                        of Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

26          F.     Plaintiff's Attorneys Are Entitled to Costs and Litigation Expenses. 25

27   V.     Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

28   Exhibit A (U.S. Consumer Law Atty Fees Survey Report 2015-16-Calif. only). . 27

Table of Authorities

**Cases**

*Armstrong v. The Rose Law Firm, P.A.*, 2002 WL 31050583

    (D.Minn., Sept. 5, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). . . . 22

*Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541,

    79 L. Ed. 2d 891 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22, 23

*Bonett v. Educ. Debt Servs*., No. 01-6528,

    2003 U.S. Dist. LEXIS 9757 (E.D. Pa., May 11, 2003). . . . . . . . . . . . . 13 n.2

*City of Riverside v. Rivera*, 477 U.S. 561; 106 S. Ct. 2686;

    91 L. Ed. 2d 466 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Camacho v. Bridgeport Financial, Inc.*,

    523 F.3d 973 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16 n.3, 19

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . 10

*Cope v. Duggins*, 203 F. Supp. 2d 650 (E.D. La. 2002). . . . . . . . . . . . . . . . . . 13 n.2

*D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379 (9th Cir.1990). . . . . . . 16

*DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232 (1st Cir. 1990). . . . . . . 15

*Edwards v. National Business Factors, Inc*.,

    897 F.Supp. 458 (D. Nev. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Emanuel v. American Credit Exchange*, 870 F.2d 805 (2d Cir. 1989). . . . . . . . . 15

*Evans v. Jeff D*., 475 U.S. 717; 106 S. Ct. 1531; 89 L. Ed. 2d 747 (1986). . . . . . 24

*Feely vs. Carrington Mortg. Servs*., LLC,

    2014 U.S. Dist. LEXIS 161626 (D. Nev. Nov. 2014). . . . . . . . . . . . . . . . . 19

*Fitzgerald v. City of Los Angeles*,

    2003 U.S. Dist. LEXIS 27382 (C.D. Cal. Dec. 8, 2003). . . . . . . . . . . . . . . 12

*Friend v. Kolodzieczak*, 72 F.3d 1386 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . 16

*Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991). . . . . . . . . . . . . . . . . . . . 15, 24

- 4 -

*Gross v. Washington Mut. Bank, F.A.*, No. 02 cv 4135 (RML),

    2006 U.S. Dist. LEXIS 16975 (E.D.N.Y. Feb. 9, 2006).. . . . . . . . . . . . 11 n.1

*Hall v. Midland Group*, No. 99-3108,

    2000 U.S. Dist LEXIS 16751 (E.D. Pa., Nov. 20, 2000). . . . . . . . . . . 11 n.1

*Henderson v. Eaton*, No. 01-0138,

    2002 U.S. Dist. LEXIS 20840 (E.D. La., Oct. 25, 2002). . . . . . . . . 10, 13 n.2

*Hensley v. Eckerhart*, 461 U.S. 424; 103 S.Ct. 1933; 76 L.Ed.2d 40 (1983).. . . . 16

*Ilick v. Miller*, 68 F. Supp. 2d 1169 (D. Nev. 1999). . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992). . . . . . . . . . . . 11

*In re Dun & Bradstreet Credit Serv. Litig.*, 130 F.R.D. 336 (S.D. Ohio 1990). . . 11

*In re GNC Shareholder Litigation: All Actions*,

    668 F. Supp. 450 (W.D. Pa. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703 (E.D. Mich. 1985). . . . . . 11

*In re Marine Midland Motor Vehicle Leasing Litig.*,

    155 F.R.D. 416 (W.D.N.Y. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 n.1

*In re Martinez*, 266 B.R. 523 (Bankr. S.D.Fla. 2001),

    *aff'd* 271 B.R. 696 (S.D. Fla. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re SmithKline Beckman Corp. Sec. Litig.*,

    751 F. Supp. 525 (E.D. Pa. 1990). . . . . . . . . . . . . . . . . . . . . . . . . 11, 11 n.1

*Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754;

    109 S. Ct. 2732; 105 L. Ed. 2d 639 (1989). . . . . . . . . . . . . . . . . . . . . . . . 16

*Jacobson v. Persolve, LLC*, 2016 WL 7230873 (N.D. Cal., Dec. 14, 2016). . . . . 20

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,

    130 S.Ct. 1605, 1615 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Jordan v. Multnomah County*, 815 F.2d 1258 (9th Cir.1987). . . . . . . . . . . . 16-17

*Lathem v. Department of Children & Youth Servs.*,

    172 F.3d 786 (11th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Libertad v. Sanchez*, 134 F.Supp.2d 218 (D.P.R. 2001). . . . . . . . . . . . . . . . . . . . . 25

*Mego Fin'l Corp. Sec. Litig. v. Nadler*, 213 F.3d 454 (9th Cir. 2000). . . . . . . . . . 10

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008). . . . . . . . . . . . . . 17

*Northcross v. Memphis Bd. of Ed.*, 412 U.S. 427; 93 S. Ct. 2201,

    37 L. Ed. 2d 48 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Perez v. Perkiss*, 742 F.Supp. 883 (D. Del. 1990). . . . . . . . . . . . . . . . . . . . . . . . . 24

*Pipiles v. Credit Bureau of Lockport, Inc*., 886 F.2d 22 (2d Cir.1989). . . . . . . . . 15

*Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754L,

    2003 U.S. Dist LEXIS 22547, (N.D. Tex. Dec. 11, 2003). . . . . . . . . . . 11 n.1

*Quaration v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . 23

*Ramirez v. N. Am. Asset Servs., LLC*, 11-cv-10237-GHK,

    2012 WL 1228086 (C.D. Cal. Apr. 9, 2012). . . . . . . . . . . . . . . . . . . . . . . . 21

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009). . . . . . . . . . . . . . . 10

*Santiago v. Equable Ascent Fin.*,

    2013 WL 3498079 (N.D. Cal., July 12, 2013). . . . . . . . . . . . . . 14, 16 n.3, 25

*Schimmel v. Slaughter*, 975 F.Supp. 1481 (M.D. Ga. 1997). . . . . . . . . . . . . . . . . 25

*Slotnick v. I.C.Q. Search & Recovery*, No. EDCV 17-2294 JGB (Kkx),

    2018 WL 6258888 (C.D. Cal. Sept. 19, 2018). . . . . . . . . . . . . . . . . . . . . . . 21

*Smith v. First Union Mortgage Corp*., No. 98-cv-5360,

    1999 U.S. Dist. LEXIS 18299 (E.D. Pa., Dec. 1, 1999). . . . . . . . . . . . . 11 n.1

*Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338 (S.D. Miss. 2003). . . . . . 11 n.1

*St. Bernard vs. State Collection Serv., Inc*., 782 F.Supp. 2d 823 (D. Ariz. 2010). 19

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . 10

*Student Public Interest Research Group v. AT&T Bell Labs*,

    842 F.2d 1436 (3d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Tenuto v. Transworld Sys.*, No. 99-4228,

    2002 U.S. Dist. LEXIS 1764 (E.D. Pa., Jan. 31, 2002). . . . . . . . . . . . . 11 n.1

*Tolentino v. Friedman*, 46 F.3d 645 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . 19, 23

*Troncelliti v. Minolta Corp.*, 666 F. Supp. 750 (D. Md. 1987). . . . . . . . . . . . . . . 11

*United Nuclear Corp. v. Cannon*, 564 F.Supp. 581 (D.R.I. 1983). . . . . . . . . . . . . 25

*Van Vraken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995). . . 10, 12

*Venegas v. Mitchell*, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). . . . . . 22

*Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997). . . 23, 25

**Statutes**

Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*.  8, 14, 14-15, 17, 25

Rosenthal Fair Debt Collection Practices Act,

     Cal. Civil Code § 1788.10 *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other Citations**

Manual for Complex Litigation, Fourth. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

NACA Class Action Guidelines (as Revised 2006). . . . . . . . . . . . . . . . . . 11-12, 12

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Pursuant to this Court's Order of February 8, 2019 (Document No. 122, page 22, ¶ 13), Povilas Karcauskas submits his Motion for an Incentive Award and Award of Attorneys' Fees and Costs payable by Defendants Goldsmith & Hull, APC ("G&H") and William Goldsmith (collectively "G&H Defendants"), subject to the approval of the Court, pursuant to 15 U.S.C. § 1692k(a)(3) and Rule 23(h) of the Federal Rules of Civil Procedure.

In the Settlement Agreement (Document No. 112-3, ¶ VI, page[1] 17 of 92), the G&H Defendants have agreed to pay Plaintiff $5,000 for his services as the class representative. Pursuant to the Settlement Agreement (Document No. 112-3, ¶ V, page 17 of 92), the G&H Defendants have also agreed to pay Plaintiff's counsel the sum of $200,000 as costs and attorneys fees, pursuant to the FDCPA and RFDCPA. To date, Plaintiff's counsel have expended a total of $366,092 in attorneys' fees and costs in this litigation and will continue to expend time and expense through the completion of this litigation. Plaintiff does not seek an amount in excess of the agreed amount of attorneys fees and costs and therefore moves the Court for a total award of $200,000 in Plaintiff's attorneys' fees and costs.

## I.   <u>PROCEDURAL HISTORY</u>

On November 30, 2015, Plaintiff commenced this class action alleging that the Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code § 1788.10 *et seq.* ("RFDCPA"). (Document No. 1.) On April 4, 2017, the Joint Brief re Class Certification was efiled. (<u>See</u> Document No. 84-1.)

---

[1]     Page numbering refers to the page number placed in the upper right corner of the page by CM/ECF.

After extensive written and oral discovery, including Plaintiff's counsel having to file motions to compel further discovery responses and documents, which the Magistrate Judge granted in part, the parties reached a class-wide settlement agreement regarding all issues raised in this litigation. (Document No. 97-6.)

By Order of February 8, 2019, the Court granted  Plaintiff's Unopposed Motion for Preliminary Approval of Settlement Agreement and Certification of Settlement Class. (Document No. 122.) The Court set a Final Approval (fairness) hearing of the Class Settlement for August 22, 2019 at 10:00 a.m.  (*Id.*, p. 22, ¶ 12.)

II.    STATEMENT OF FACTS

As described in his declaration, a reasonable incentive award is appropriate. Karcaukas has diligently pursued this litigation on behalf of the class, had his deposition taken, spent hours conferring with Plaintiff's counsel during the settlement negotiations, helped answer Defendants' discovery, and incurred personal financial risk by acting as the named plaintiff.  (Karcauskas Decl., ¶¶ 9-20.)

During the course of this litigation, Plaintiff Povilas Karcauskas was represented by Robert Stempler and O. Randolph Bragg. Plaintiff's attorney Mr. Stempler has expended a total of 400.10 hours on behalf of Plaintiff through April 25, 2019. (Declaration of Robert Stempler in Support of Plaintiff's Motion for an Award of Costs and Attorneys' Fees filed herewith ¶ 17.) The current hourly rate for the services provided by Mr. Stempler is $600.00 per hour. *Id.* The lodestar calculation of attorney fees for the services of Mr. Stempler in this matter is (400.10 hours x $600/hr) $240,060.  *Id.*  Mr. Stempler incurred $5,012 in costs. *Id.* Thus, a total of $245,072 in fees and costs through April 25, 2019 is submitted by Mr. Stempler.

Through April 11, 2019, Plaintiff's attorney O. Randolph Bragg expended a total of 201.70 hours on behalf of Plaintiff.  (Declaration of O. Randolph Bragg in Support of Plaintiff's Motion for an Award of Costs and Attorneys' Fees filed herewith.) The hourly rate for the services provided by O. Randolph Bragg is $600.00

per hour.  *Id.*  The lodestar calculation for the services of Mr. Bragg is (201.70 hours x \$600/hr) \$121,020.  Mr. Bragg's firm has incurred no costs in this litigation.

Attorneys' fees and costs for the time and expenses incurred subsequent to this reported time are also requested.

III.    STATEMENT OF QUESTION PRESENTED

Is Plaintiff Povilas Karcauskas entitled to an award for his services as the class representative and an award of costs and reasonable attorneys' fees?

Plaintiff submits that this question should be answered in the affirmative.

IV.    ARGUMENT

A.    THE COURT HAS DISCRETION TO AWARD AN INCENTIVE PAYMENT.

Generally, the purpose of an incentive award is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). The trial court has discretion to award incentives to class representatives. *Mego Fin'l Corp. Sec. Litig. v. Nadler*, 213 F.3d 454, 463 (9th Cir. 2000); *Van Vraken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted). Named plaintiffs "are eligible for reasonable incentive payments" and "[t]he district court must evaluate their awards individually." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003), *citing Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).  "Federal courts consistently approve incentive awards in class action lawsuits, to compensate name plaintiffs for the services they provide and burdens they shoulder during litigation." *Henderson v. Eaton*, No. 01-0138, 2002 U.S. Dist. LEXIS 20840, *17-18 (E.D. La., Oct. 25, 2002).

Awards to named plaintiffs in class actions are appropriate compensation for the time and expense they incur in serving as class representatives. *See, e.g.*, *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving $5,000 award to each of several class representatives); *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992); *In re GNC Shareholder Litigation: All Actions*, 668 F. Supp. 450, 451 (W.D. Pa. 1987); *Troncelliti v. Minolta Corp.*, 666 F. Supp. 750, 752 (D. Md. 1987); *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 709-10 (E.D. Mich. 1985); *In re Dun & Bradstreet Credit Serv. Litig.*, 130 F.R.D. 336 (S.D. Ohio 1990) (awards of $55,000 to each of two and $35,000 to each of three class representatives).  As well, many district courts have approved incentive awards in FDCPA class action lawsuits.[1]

**B.   INCENTIVE AWARD GUIDELINES AND CRITERIA SUPPORT A GREATER THAN AVERAGE AWARD TO MR. KARCAUSKAS.**

Consumers who fight on behalf of an entire class should be reasonably compensated for their efforts when those efforts are successful.  "Payments of up to $5,000 should not require over particularized court examination before approval…. Award of larger amounts should be based upon the court's examination of specific

---

[1]    *See, e.g.*, *Gross v. Washington Mut. Bank, F.A.*, No. 02 cv 4135 (RML), 2006 U.S. Dist. LEXIS 16975, *18-*19 (E.D.N.Y. Feb. 9, 2006) (approving payment of $5,000 for the class representative's services in FDCPA class action); *Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754L, 2003 U.S. Dist LEXIS 22547, *24-25 (N.D. Tex. Dec. 11, 2003) (in a case involving FDCPA claims the court approved combined incentive payments of $16,665 to the three named plaintiffs); *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 367-68 (S.D. Miss. 2003) (the court approved special payments to the class representatives in a case involving FDCPA claims); *Tenuto v. Transworld Sys.*, No. 99-4228, 2002 U.S. Dist. LEXIS 1764, *13-*14 (E.D. Pa., Jan. 31, 2002) (FDCPA class action where court awarded an incentive payment of $2,000 to the named plaintiffs.); *Hall v. Midland Group*, No. 99-3108, 2000 U.S. Dist LEXIS 16751, *25 (E.D. Pa., Nov. 20, 2000) ($2,000 incentive payment awarded) (*citing Smithkline Beckman*, 751 F. Supp. at 535); *In re Marine Midland Motor Vehicle Leasing Litig.*, 155 F.R.D. 416, 422 (W.D.N.Y. 1994) (involving a FDCPA claim); *Smith v. First Union Mortgage Corp.*, No. 98-cv-5360, 1999 U.S. Dist. LEXIS 18299, *1 (E.D. Pa., Dec. 1, 1999) (approving an incentive award to two class representatives in an FDCPA class action settlement).

circumstances of the case and the plaintiffs' efforts on behalf of the class." NACA Class Action Guidelines (as Revised 2006), at 22-24. *See* http://www.naca.net/_assets/media/RevisedGuidelines.pdf (originally printed in National Association of Consumer Advocates – Standards and Guidelines for Litigated and Settling Consumer Class Actions, 176 F.R.D. 375, 387 (1997)). The NACA's Guidelines are instructive, and state on page 23:

> In deciding whether a larger award is justified, counsel and the court should consider factors such as: (a) Whether the plaintiff incurred expenses or spent time responding to written discovery, conferring with counsel about case background or settlement issues, or performing any other tasks associated with the prosecution of the litigation; (b) Whether the plaintiffs' deposition was taken, how long it took, the amount of travel or whether other disruption in schedule was involved; ( c) Whether the plaintiff testified at trial or at any pre-trial hearing; (d) Whether the plaintiff assumed any risks as a result of undertaking representation of the class, including risks of liability for costs or attorney fees, or risk of adverse extra-judicial action by defendants; and (e) The size of the plaintiff's individual claim in the case *vis-à-vis* the efforts required as class representative.

Courts may also consider: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vraken,* 901 F. Supp. at 299 (citations omitted); *see also Fitzgerald v. City of Los Angeles*, 2003 U.S. Dist. LEXIS 27382, 9-10 (C.D. Cal. Dec. 8, 2003) (same), *citing Van Kraken,* 901 F. Supp. at 299).

The suggested guidelines and criteria weigh in favor of a larger than average incentive award to be granted to Mr. Karcauskas.  From the start, Mr. Karcauskas was the consummate consumer advocate.  He pursued this case not for his own benefit but to benefit less sophisticated people that would have been duped by the Defendants' deceptive form letter.  By any measure, Mr. Karcauskas succeeded.  First, he helped secure a recovery to be shared by his fellow class members.[2]  Second, his efforts have raised the Defendants' awareness, which would result in prompt, corrective action.

Mr. Karcauskas' efforts began three-and-a-half years ago.  His complaint, filed on November 30, 2015, was based on a collection letter Plaintiff received from Defendants.  Mr. Karcauskas brought the misleading letter to the attention of his counsel in 2015 and actively participated in this case since its inception, including many meetings by telephone with his counsel over several hours.  *See generally*, Declaration of Povilas Karcauskas in Support of Plaintiff's Motion For Incentive Award  ("Karcauskas Decl.").  Recognizing his responsibilities as the representative plaintiff, Mr. Karcauskas took significant actions to protect the interests of the class.  *Id*. at ¶¶ 8-16. Mr. Karcauskas selected counsel qualified and experienced in unfair debt and other consumer litigation, including class action lawsuits.

Mr. Karcauskas elected to file the lawsuit as a class action, so as to represent the interests of the putative class members.  *Id*. at ¶¶ 8-16.  By filing the action, Mr. Karcauskas protected the interests of the absent class members by putting Defendants on notice of violations and thereby preventing further violative communications between Defendants and the putative class.

---

[2]    Incentive compensation that exceeds class members' recovery has been approved in FDCPA cases.  *See Cope v. Duggins*, 203 F. Supp. 2d 650, 653 (E.D. La. 2002) (awarding $4,250 in settlement to named plaintiff when class was awarded $8,000 in settlement); *Henderson*, 2002 U.S. Dist. LEXIS 20840, at *17-*18 (awarding $3,000 incentive compensation to named plaintiff in FDCPA class action where 142 members shared class recovery of $3,000); *Bonett v. Educ. Debt Servs.*, No. 01-6528, 2003 U.S. Dist. LEXIS 9757, *23 (E.D. Pa., May 11, 2003) (compensating plaintiff $3,000 for her service as class representative in FDCPA action where 284 class members each received $77.46).

Mr. Karcauskas took his role as representative plaintiff seriously and spent hours reviewing the documents related to the complaint, settlement offers and counter offers, as well as submitting to written discovery and his deposition, meeting with his counsel and attending court conferences and hearings. *Id*. at ¶¶10-13. During the early stages of litigation, Mr. Karcauskas rejected offers to settle the case individually that did not provide adequate statutory damages as related to the class members. *Id*. at ¶ 16. Thus, Mr. Karcauskas should receive from the G&H Defendants payment of the amount of $5,000 for services as class representative as agreed in the Settlement Agreement. (Document No. 112-3, ¶ VI, page 17 of 92.)

## C.   PLAINTIFF WAS SUCCESSFUL IN THIS ACTION.

The Fair Debt Collection Practices Act requires the payment of costs and reasonable attorney's fees to a successful consumer. 15 U.S.C. §1692k(a) states:

> [A]ny debt collector who fails to comply with any provision of this subchapter . . . is liable to such person in an amount equal to the sum of--[actual damages], [statutory damages], and (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

Defendants agreed they "shall pay Plaintiff's counsel the sum of Two Hundred Thousand Dollars ($200,000) as attorneys' fees and costs pursuant to the FDCPA and RFDCPA." (Document No. 112-3, ¶ V, page 17 of 92.)

"The FDCPA's statutory language makes an award of fees mandatory." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (*Camacho II*) (citation omitted). "Parties who prevail in actions brought under the FDCPA may recover reasonable attorneys' fees and costs from the opposing side." *Santiago v. Equable Ascent Financial*, 2013 WL 3498079, *2 (N.D. Cal., July 12, 2013). "Under

the Fair Debt Collections Practices Act ("FDCPA"), the prevailing plaintiff is entitled to `a reasonable attorney's fee as determined by the court.' 15 U.S.C. §1692k(a)(3). Such an award is mandatory under the FDCPA." *Edwards v. National Business Factors, Inc.*, 897 F.Supp. 458, 459 (D. Nev. 1995) (citations omitted). The Second Circuit has also stated "the award of attorney's fees to plaintiffs for a debt collector's violation of 'any provision' of the FDCPA is mandatory." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir.1989), *citing Emanuel v. American Credit Exchange*, 870 F.2d 805, 809 (2d Cir. 1989). As the successful party in this case, Plaintiff's counsel is entitled to an award of costs and reasonable attorney's fees.

Given the structure of § 1692k(a)(3), attorney's fees should not be construed as a special or discretionary remedy. Rather, the FDCPA mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general. *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991), *see also DeJesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir. 1990).

Pursuant to the Settlement Agreement the class members will receive $20,000 (Document No. 112-3, ¶ IV (B), page 17 of 92), approximately $18.69 each. This amount is approximately equal to 1% of the G&H Defendants' net worth. (*Id.*) Any undistributed class funds will be awarded to National Consumer Law Center and National Association of Consumer Advocates for use in consumer representation and/or education. (*Id.*) In addition to the payment to the Class, Plaintiff Karcauskas will receive $2,000 as FDCPA and RFDCPA statutory damages and $5,000 for his services as the class representative for a total of $7,000. (Document No. 112-3, ¶ IV (A) and ¶ VI.) These amounts are the maximum statutory damages that Mr. Karcauskas and the Class could receive for their claims brought pursuant to the FDCPA, 15 U.S.C. §1692k(a)(2), and RFDCPA. Defendants will also bear the expense of class notice and administration not to exceed $10,000. (Document No.

112-3, ¶ VII.) The G&H Defendants have also agreed to pay Plaintiff's attorneys' fees and costs in the sum of $200,000. (*Id*. ¶ V.)

## D. PLAINTIFF'S ATTORNEYS SHOULD BE AWARDED FEES PURSUANT TO THE LODESTAR FORMULA.

The U.S. Supreme Court has explained the calculation for an award of attorney's fees: "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433; 103 S. Ct. 1933, 1939; 76 L. Ed. 2d 40 (1983).[3] Although this decision, and others cited hereinafter, arise in the context of the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, these criteria are equally applicable here. "The standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a `prevailing party.'" *Id.* 103 S. Ct. at 1939, n.7. "We have stated in the past that fee shifting statutes' similar language is `a strong indication that they are to be interpreted alike." *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754; 109 S. Ct. 2732, 2735 n.2.; 105 L. Ed. 2d 639 (1989), *quoting Northcross v. Memphis Bd. of Ed.*, 412 U.S. 427, 428; 93 S. Ct. 2201, 2202, 37 L. Ed. 2d 48 (1973). The multiplication of the reasonable number of hours expended times the reasonable hourly rate is referred to as the "lodestar." *Friend v. Kolodzieczak*, 72 F.3d 1386, 1389 (9th Cir. 1995).

The Ninth Circuit stated: "The use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable; the district court must look to the 'totality of the circumstances and the relevant factors, including delay in payment.'" *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384

---

[3]   See: *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (*Camacho II*); *Santiago v. Equable Ascent Financial*, *supra*, at *2.

(9th Cir.1990), *quoting Jordan v. Multnomah County*, 815 F.2d 1258, 1262 n.7 (9th Cir.1987). Here, Plaintiff's counsel worked on this case most extensively from its inception (three-and-a-half years ago) until the motions for preliminary approval were heard in early 2018. (See Stempler Decl. ¶ 17.) Accordingly, the Court should use Mr. Stempler's current rate of $600/hour to compute his lodestar amount. *Id.*

The Ninth Circuit, in *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008), stated:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

The FDCPA requires the payment of costs and reasonable attorney fees to a successful consumer. "[A]ny debt collector who fails to comply with any provision of this subchapter . . . is liable to such person in an amount equal to the sum of "[actual damages] [statutory damages]" and in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Defendants acknowledge that Plaintiff is the prevailing party in this litigation. The G&H Defendants have agreed to pay to the Class a total Settlement Fund of $20,000. (Document No. 112-3, ¶ IV B.) This amount equals or exceeds 1% of the G&H Defendants' net worth. Any undistributed class funds will be awarded to National Consumer Law Center and National Association of Consumer Advocates use in consumer representation and/or education. (*Id.*)  In addition to the payment to the Plaintiff, Povilas Karcauskas will receive $2,000 for his FDCPA and RFDCPA

statutory damages plus $5,000 for his services as the class representative for a total of $7,000. (Document No. 112-3, ¶ IV (A) and VI.)

These amounts are the maximum statutory damages that Mr. Karcauskas and the Class could receive for their claims brought, pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(2) and the RFDCPA.  Defendants will also bear the expense of class notice and administration up to $10,000. (Document No. 112-3, ¶ VII.) Defendants also agreed to pay attorneys' fees and costs in the sum of $200,000.  (*Id*. ¶ V.)

E.     <u>FACTORS TO BE CONSIDERED</u>.

Among the factors to be reviewed in granting an award of attorneys' fees, the Court should consider:

**1.     Plaintiff's attorneys' fees and costs are reasonable given counsels' skills, experience and reputation.**

Although this case required protracted litigation, the time expended was limited under the circumstances due to counsels' combined experience in consumer protection litigation. Further, there are few attorneys who specialize in litigating FDCPA class action cases. However, counsel for Plaintiff are experienced in these cases. Plaintiff's counsel used their existing knowledge and experience in the consumer protection field to plead this case and negotiate a fair and reasonable settlement in which the named Plaintiff and the class received the maximum statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(B). Further evidence of the reasonableness of the time spent is counsel's billing discretion. For example, each of Plaintiff's attorneys reviewed each entry with an eye to reducing the time requested based on the work accomplished.

Two attorneys represented Plaintiff and the Class in this lawsuit. Mr. Stempler has expended a total of $245,072 in attorney's fees and costs in this matter, through April 25, 2019. (<u>See</u> Declaration of Robert Stempler in Support of Attorney's Fees and Expenses ¶ 17.) Plaintiff's attorney, O. Randolph Bragg, has expended a total of

$121,020 in attorneys' fees and expenses in this matter through April 11, 2019. (See Declaration of O. Randolph Bragg in Support of Attorney's Fees and Expenses, filed herewith.)   Class Counsel will continue to expend time and expense through the completion of this litigation.

The U.S. Supreme Court has stated: "The statute and legislative history establish that `reasonable fees' under section 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984) (footnote omitted). See: *Camacho II, supra,* at 979-81. "In order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases . . . . Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 652-653 (7th Cir. 1995).  On fee petitions, district courts are allowed to use the plaintiff's counsel's "current rates . . . when calculating the lodestar amount." *Mathur v. Board of Trustees*, 317 F.3d 738, 744-5 (7th Cir. 2003), *citing Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989).

To "encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases." *Camacho II*, *supra*, 523 F.3d at 981. In furthering this goal, therefore, "attorney[s'] fees must not hinge on a percentage of actual damages awarded." *St. Bernard vs. State Collection Serv., Inc.*, 782 F.Supp. 2d 823, 826 (D. Ariz. 2010). Given such, Plaintiff's fees request is not per se unreasonable simply because it is over ten times greater than the damages awarded to plaintiff in the instant case. *Feely vs. Carrington Mortg. Servs., LLC*, 2014 U.S. Dist. LEXIS 161626 (D. Nev. Nov. 2014).

1   Plaintiff's fee request is well within the range of similar work. The current

2   billing rates requested by Mr. Bragg and Mr. Stempler - $600.00/hr - are similar to

3   rates that have previously been awarded by the U.S. District Courts in California.

4   Two further declarations, submitted concurrently, support the $600/hour rate.  (See

5   Declarations of Larry R. Hoddick, Steven A. Simons.)

6   Mr. Bragg has over 40 years of litigation experience.  He began representing

7   consumers in consumer rights litigation in 1985 and over the last 5 years alone he has

8   had numerous reported decisions across the country pertaining to FDCPA cases.  Mr.

9   Bragg's experience is commensurate with the top rate awarded to lawyers in the

10  Central District of California.  See  Jacobson v. Persolve, LLC, 2016 WL 7230873

11  at *7 (N.D. Cal., Dec. 14, 2016) ("an hourly rate of $600 is reasonable because of

12  Bragg's 40 years of litigation experience").

13  Mr. Stempler has over 26 years of litigation experience. Mr. Stempler's current

14  hourly rate is $600. (Stempler Decl., ¶ 17.)  Mr. Stempler has over 21 years'

15  experience in representing consumers in debt collection harassment matters.

16  Admitted to practice in 1992, Mr. Stempler has developed his litigation skills,

17  protecting the legal rights of individuals and consumers in State Superior and U.S.

18  District Courts, often applying the Fair Debt Collection Practices Act, the RFDCPA

19  and the Fair Credit Reporting Act, among the many statutes enacted to protect

20  consumer rights.  Mr. Stempler started his consumer law firm in 1997, after practicing

21  law at other law firms.

22  Mr. Stempler's request of $600 per hour is reasonable and appropriate for this

23  case and the venue. It is within the range of hourly rates charged by other lawyers in

24  the non-contingent specialized civil litigation practice. The United States Consumer

25  Law Attorney's Fees Survey Report 2015-16 (a copy of the legend and California

26  pages are attached hereto as Exhibit A). Mr. Stempler's request to be awarded at

27  $600/hour is his current hourly rate for cases filed in U.S. District Court. (See

28  Declaration of Robert Stempler in Support of Attorney's Fees and Expenses ¶ 17.)

1    Judge Bernel, in _Slotnick v. I.C.Q. Search & Recovery_, No. EDCV 17-2294
2    JGB (KKx), 2018 WL 6258888, at *3 (C.D. Cal. Sept. 19, 2018), held that "The
3    Court finds that the Attorney Fee Survey is an adequate means of establishing average
4    billing rates for consumer protection attorneys in this forum. See _Ramirez v. N. Am._
5    _Asset Servs., LLC_, 11-cv-10237-GHK 2012 WL 1228086, at *3 (C.D. Cal. Apr. 9,
6    2012) (relying on Attorney Fee Survey to determine billing rates)." The United States
7    Consumer Law Attorney's Fees Survey Report 2015-16 (a copy is attached hereto as
8    Exhibit A) states at page 184 that the hourly rates for consumer attorneys in Los
9    Angeles with over 26-30 years of experience is $560/hr.  At page 183 of the Survey,
10   it shows that the 75% Median Attorney Rate for All Attorneys is $600/hr.

11   Thus, the rates of $600.00/hr for Plaintiff's Class Counsel used to calculate
12   their lodestar is appropriate in this case.

13   **2.    Plaintiff's class action claims were novel and complex.**

14   Plaintiff's claims were novel to the Ninth Circuit.  Plaintiff claimed, among
15   other things, that Defendant mailed or caused to be mailed letters in the form of
16   Exhibit A which used false, deceptive and misleading representation of a consumer's
17   rights in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10) and
18   1692f, as well as Cal. Civil Code § 1788.17

19   Plaintiff's class action complaint was also complex. The U.S. Supreme Court
20   has described the FDCPA, the statute at issue here, as "a comprehensive and complex
21   federal statute." _Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA_, 130 S.Ct.
22   1605, 1615 (2010).  Class actions are generally considered to be complex.  See:
23   _Manual for Complex Litigation, Fourth_, § 22.

24   **3.    The fee is contingent.**

25   In a Consumer Credit Protection Act case, the fee is very often contingent not
26   on the amount of damages, but on award by the court or agreement of the opponent.
27   In a private attorney general case, Congress encourages counsel to bring suit,
28   recognizing that counsel cannot charge the client an hourly fee, because the fee may

be out of proportion to the recovery. According to the Supreme Court in *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989): "But as we see it, a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees and to hold otherwise would be inconsistent with the statute and its policy and purpose." Conversely, the Court ruled that the fee award does not impose a cap on a contingent fee agreement; the attorney can get more from his client (not from the opponent) if his agreement so provides. *Venegas v. Mitchell*, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990). If contingent, the fee award should compensate counsel for the risk of receiving no compensation. *Blum v. Stenson*, 465 U.S. 886, 903, 104 S.Ct. 1541, 1551, 79 L.Ed.2d 891 (1984). Here fees are contingent on Mr. Karcauskas' success, pursuant to 15 U.S.C. § 1692k(a)(3). (*See* Stempler Decl., ¶ 19; Karcauskas Decl., ¶ 22.)

### 4. Plaintiff's counsel could not spend the same time on both this case and other cases.

Counsel spent over three and one-half years aggressively litigating this matter. The time spent by Class Counsel on this case was not, and could not be, spent at the same time on other cases. There are substantial opportunity costs in preparing the necessary documentation and briefing to present a federal civil action case to the Court. The time expended on Plaintiff's behalf by counsel was time which would have been spent on other matters had this case not been filed or litigated to this extent. It is impossible for Plaintiff's counsel to determine what other cases may have been precluded due to their representation of this Plaintiff, but it is clear that the hours spent on this case would have been expended on other matters.

### 5. The undesirability of the case.

Most attorneys practicing in the Central District of California do not litigate plaintiffs' class action consumer protection cases, particularly on a contingency basis. This claim would be considered undesirable.

///

### 6.   Awards in Similar Cases.

Plaintiff's lodestar consists of 601.80 hours.  More time has been and will continue to be expended on this case. The rates of $600/hr requested here  are similar to rates previously approved by this Court.

Plaintiff's attorneys' fee request is within the prevailing market range in this type of representation. _Blum v. Stenson_, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed.2d 891 (1984). "Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." _Tolentino v. Friedman_, 46 F.3d 645, 653 (7th Cir. 1995); _Zagorski v. Midwest Billing Services, Inc._, 128 F.3d 1164, 1166 (7th Cir. 1997) (The plaintiffs have brought a "successful action" under the FDCPA and thus are entitled to a "reasonable attorney's fee.")

### 7.   Attorneys' Fee Award Is Not Limited by Amount of Damages.

So long as the plaintiff is successful, _i.e._, recovers more than nominal damages, the plaintiff should be awarded attorney fees pursuant to a lodestar calculation.  "In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under section 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves." _City of Riverside v. Rivera_, 477 U.S. 561, 581; 106 S. Ct. 2686, 2697; 91 L. Ed. 2d 466 (1986) (footnote omitted), _see also Quaration v. Tiffany & Co._, 166 F.3d 422 (2d Cir. 1999); _Zagorski v. Midwest Billing Services, Inc._, 128 F.3d 1164 (7th Cir. 1997). The benefits to the public as a whole resulting from lawsuits which encourage compliance with statutory provisions are more important than relatively small damage awards.  Indeed, when a provision for counsel fees is included in a regulatory act, it is a recognition that enforcement of the statute would be unlikely if an individual had to pay his or her own attorney's fees. The Court quoted Senator Tunney's remarks in the Congressional Record:

If the citizen does not have the resources, his day in court is denied him;

the congressional policy which he seeks to assert and vindicate goes

1
2

unvindicated; and the entire nation, not just the individual citizen, suffers.

3

4
5
6
7

*City of Riverside v. Rivera*, *supra*, at 477 U.S. at 575, 106 S. Ct. at 2694 (citation omitted). In *Student Public Interest Research Group v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3d Cir. 1988), the Third Circuit amplified this thought stating:

8
9
10
11
12

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

13

14
15

"Congress has relied on such plaintiffs to act as private attorneys general." *Id.*, at 1450 n.13, *see also Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991).

16
17
18
19
20
21

The damages award often bears no relation to the amount of attorney's fees granted. "[A]ttorney's fees awarded by district courts have `frequently outrun the economic benefits ultimately obtained by successful litigants.'" *Evans v. Jeff D.*, 475 U.S. 717, 735; 106 S. Ct. 1531, 1541; 89 L. Ed. 2d 747 (1986) (citation omitted). Upon finding a statutory violation and damages, the attorney's fees award should be made in the lodestar amount. *Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996).

22
23
24
25
26
27
28

For example, in *Armstrong v. The Rose Law Firm, P.A.*, 2002 WL 31050583 (D.Minn., Sept. 5, 2002), the district court approved the award of $43,180 in attorney's fees, where the plaintiff recovered $1,000 in statutory damages. The Southern District of Florida affirmed the bankruptcy court's award of attorney's fees of $29,037.50 where the plaintiff recovered FDCPA statutory damages of only $1,000. *In re Martinez*, 266 B.R. 523, 544 (Bankr. S.D.Fla. 2001), *aff'd* 271 B.R. 696 (S.D. Fla. 2001). In *Perez v. Perkiss*, 742 F.Supp. 883 (D. Del. 1990), the district

court awarded $10,110 in attorney's fees where the plaintiff's recovery was only $1,200. The Seventh Circuit reversed a district court's denial of attorneys' fees even though the plaintiffs only recovered $100 ($50 each) as FDCPA statutory damages and remanded for determination of an award of attorneys' fees. *Zagorski v. Midwest Billing Services, Inc.*, *supra*.  Of course, the amount of reasonable attorneys' fees awarded pursuant to the FDCPA is left to the sound discretion of the judge. *Schimmel v. Slaughter*, 975 F.Supp. 1481, 1484 (M.D. Ga. 1997).

Plaintiff requests this Court to approve the agreed amount of attorneys fees and costs in the sum of $200,000.

### F.   PLAINTIFF'S ATTORNEYS ARE ENTITLED TO COSTS AND LITIGATION EXPENSES

Plaintiff also requests the award of costs and litigation expenses in addition to an award of attorneys' fees. The District of Nevada stated that "plaintiffs are also entitled to an award of costs representing out-of-pocket litigation expenses . . . includ[ing] costs incurred in travel (airfare, car rental, hotels and food, gasoline and the like), telephone, postage and photocopying." *Ilick v. Miller*, 68 F. Supp. 2d 1169, 1181 (D. Nev. 1999), *see also Santiago v. Equable Ascent Financial*, *supra*, at *5.

The FDCPA grants the successful plaintiff "the costs of the action." 15 U.S.C. § 1692k(a)(3). Long distance telephone and faxing expenses, as well as copying and postage have been awarded as costs. *Sousa v. Miguel*, 32 F.3d 1370, 1374 (9th Cir. 1994). Recoverable costs include travel, photocopies, lodging, postage, telephone calls, and computerized research. *Libertad v. Sanchez*, 134 F.Supp.2d 218, 236 (D.P.R. 2001).  Costs may be recovered as provided for by statute as well as 28 U.S.C. § 1920, *see Lathem v. Department of Children & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999).  Computer research costs are recoverable.  *United Nuclear Corp. v. Cannon*, 564 F.Supp. 581, 591-92 (D.R.I. 1983) ("LEXIS is an essential tool of a modern, efficient law office. As such, it saves lawyers' time by increasing the

efficacy of legal research. Denial of reimbursement for LEXIS charges in a proper case would be an open invitation to law firms to use high-priced attorney time to perform routine research tasks that can be accomplished quicker and more economically with LEXIS.")

Thus, Plaintiff's litigation expenses and costs are compensable.

## V.   CONCLUSION

Accordingly, Plaintiff Povilas Karcauskas should receive the agreed amount of $5,000 for his services, as class representative.  Also, on behalf of himself and the class, the Court should award costs and reasonable attorneys' fees in the amount of $200,000 for their services as Class Counsel payable by the G&H Defendants.

The following chart displays the amount of attorneys fees and costs already expended by Plaintiff's counsel:

| ATTORNEY | RATE | HOURS | TOTAL FEES | COSTS | TOTAL FEES & COSTS |
|---|---|---|---|---|---|
| Mr. Bragg | $600 | 201.70 | $121,020 | -0- | $121,020 |
| Mr. Stempler | $600 | 400.10 | $240,060 | $5,012 | $245,072 |
| | | | | | |
| TOTAL | N/A | 601.80 | **$361,080** | **$5,012** | $366,092 |

Although the amount of time and expenses incurred exceeds the agreed amount of attorneys' fees and costs, Plaintiff requests an award for the agreed sum of $200,000 for attorneys' fees and costs and the incentive payment of $5,000.

Dated: May 3, 2019

HORWITZ, HORWITZ & ASSOC.

CONSUMER LAW OFFICE OF
ROBERT STEMPLER, APC
  /s/
By: Robert Stempler,
Co-Counsel for Plaintiff

**Exhibit A**



# UNITED STATES CONSUMER LAW

# ATTORNEY FEE SURVEY REPORT

# 2015-2016



# Ronald L. Burdge, Esq.

# United States Consumer Law
# Attorney Fee Survey Report 2015-2016

Survey Conducted By
and
Survey Report Authored By

Ronald L. Burdge, Esq.
Burdge Law Office Co. L.A.
8250 Washington Village Drive
Dayton, OH 45458-1850
Voice: 937.432.9500
Fax: 937.432.9503

Email: Ron@BurdgeLaw.com



Attribution, No Derivs
CC-BY-ND

This copyright license allows for redistribution, commercial and non-commercial, as long as all quoted and selected contents are passed along unchanged and with credit to the author.

Copyright © 2017, 2018 by R.L.Burdge
March 13, 2018

This publication contains the results of proprietary research.

This publication was created to provide accurate and authoritative information concerning the subject matter covered. The publisher is not engaged in rendering legal or other professional advice and this publication is not a substitute for the advice of an attorney or expert. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

1. Introduction

This Survey Report publishes the results of the United States Consumer Law Attorney Fee Survey for 2015-2016. It is the only Consumer Law survey whose methodologies have been supported by the National Association of Legal Fee Analysis, a non-profit professional association for the legal fee analysis field.

This Survey Report continues to be the only national survey of Consumer Law practitioners in the United States and has been used in more than 35 jurisdictions, including state and federal courts, the U.S. Court of Federal Claims, the U.S. Department of Justice, the U.S. Department of Labor, and the American Arbitration Association to determine reasonable attorney fee rates, resulting in more than $7.9 million in awards across the United States.

Attorneys in every state and the U.S. Territories took part in the national survey and the results this year continue the trend of being the most comprehensive since our continuous research work began in 1999.

The findings cited in this Survey Report are based on a survey employing an online, email, and telephone survey representing about 4,500 members of the National Association of Consumer Advocates and the National Association of Consumer Bankruptcy Attorneys and other known attorneys practicing in the field of Consumer Law identified through Avvo.com, Lawyers.com, and court filings around the country. There were 721 participants in this survey, establishing an approximate 16.0% participation rate. This participation rate was robust. An internet search for similar state bar association surveys located 13 surveys with an average participation rate of 12.4%.[1]

Because the survey was conducted in 2015 and 2016, the hourly rates and other data reported represent 2015 and 2016 values. The reader may find some minor adjustment necessary or desirable for application outside of 2015 and 2016.

---

[1] A Google search of the term "Economics of Law Practice Survey," a common title for many bar association surveys, resulted in survey reports with participation rates that could be compared to state attorney totals as follows: Alabama (7.3%), Arizona (16.0%), Florida (1.7%), Iowa (16%), Michigan (11.6%), Mississippi (9.7%), Missouri (9.5%), Nebraska (12.2%), New Hampshire (20.4%), New Mexico (15.1%), Ohio (7.8%), Oklahoma (11.3%), Texas (12.5%).

California

|  | This Survey |
| --- | --- |
| Firm Size | 2.3 |
| Median Years in Practice | 18.0 |
| Concentration of Practice in Consumer Law | 83.2 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | Bankruptcy |
| Median Number of Paralegals in Firm | 1.0 |
| Last Time Rate Change Occurred (months) | 19.0 |
| Median Paralegal Rate for All Paralegals | 75 |
| Average Attorney Rate for All Attorneys | 465 |
| 25% Median Attorney Rate for All Attorneys | 325 |
| Median Attorney Rate for All Attorneys | 450 |
| 75% Median Attorney Rate for All Attorneys | 600 |
| 95% Median Attorney Rate for All Attorneys | 725 |
| Median Metropolitan Attorney Rate | 450 |
| Median Non-Metropolitan Attorney Rate | 350 |
| Median Attorney Rate in Northern Area of State | 475 |
| Median Attorney Rate in Southern Area of State | 450 |
| Median Attorney Rate in Eastern Area of State | 475 |
| Median Attorney Rate in Western Area of State | 475 |
| Median Attorney Rate in Central Area of State | 463 |

Exhibit A
31

Median Rates for Practice Areas

|  | 25% Median | Median | 95% Median |
|---|---|---|---|
| Attorneys Handling Bankruptcy Cases | 300 | 350 | 625 |
| Attorneys Handling Class Action Cases | 450 | 513 | 725 |
| Attorneys Handling Credit Rights Cases | 350 | 450 | 725 |
| Attorneys Handling Mortgage Cases | 350 | 438 | 700 |
| Attorneys Handling Vehicle Cases | 400 | 463 | 700 |
| Attorneys Handling TCPA Cases | 400 | 450 | 700 |
| Attorneys Handling Other Cases | 350 | 425 | 725 |

Experience Variable Table

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | 300 |
| 1-3 | 225 |
| 3-5 | 273 |
| 6-10 | 389 |
| 11-15 | 443 |
| 16-20 | 501 |
| 21-25 | 513 |
| 26-30 | 511 |
| 31-35 | 513 |
| 36-40 | 534 |
| 41+ | 625 |

Exhibit A
32

Specialty Variable Table

| Percentage of Consumer Law Practice | Average Attorney Hourly Rate |
|---|---|
| 100 | 496 |
| 90 | 519 |
| 80 | 414 |
| 70 | 520 |
| 60 | 510 |
| 50 | 458 |

Small Firm Size Variable Table

| Years in Practice | Average Attorney Hourly Rate |
|---|---|
| <1 | 300 |
| 1-3 | 300 |
| 3-5 | 283 |
| 6-10 | 380 |
| 11-15 | 450 |
| 16-20 | 554 |
| 21-25 | 550 |
| 26-30 | 585 |
| 31-35 | 538 |
| 36-40 | 600 |
| 41+ | 625 |

Exhibit A
33

Large Firm Size Variable Table

| Years in Practice | Average Attorney Hourly Rate |
|---|---|
| <1 | 300 |
| 1-3 | 275 |
| 3-5 | 300 |
| 6-10 | 391 |
| 11-15 | 454 |
| 16-20 | 537 |
| 21-25 | 550 |
| 26-30 | 613 |
| 31-35 | 582 |
| 36-40 | 625 |
| 41+ | 625 |

Exhibit A
34

California, Los Angeles - Long Beach - Anaheim

| | |
|---|---|
| Firm Size | 2.5 |
| Median Years in Practice | 16.5 |
| Concentration of Practice in Consumer Law | 80.1 |
| Primary Practice Area | Consumer Law |
| Secondary Practice Area | General Practice |
| Last Time Rate Change Occurred (months) | 14.4 |
| Median Number of Paralegals in Firm | 2.0 |
| Average Paralegal Rate for All Paralegals | 94 |
| Average Attorney Rate for All Attorneys | 464 |
| 25% Median Attorney Rate for All Attorneys | 325 |
| Median Attorney Rate for All Attorneys | 450 |
| 75% Median Attorney Rate for All Attorneys | 600 |
| 95% Median Attorney Rate for All Attorneys | 725 |

Median Rate for Practice Areas

| | Median |
|---|---|
| Attorneys Handling Bankruptcy Cases | 350 |
| Attorneys Handling Class Action Cases | 500 |
| Attorneys Handling Credit Rights Cases | 450 |
| Attorneys Handling Mortgage Cases | 400 |
| Attorneys Handling Vehicle Cases | 475 |
| Attorneys Handling TCPA Cases | 450 |
| Attorneys Handling Other Cases | 400 |

Exhibit A
35

Experience Variable Table

| Years Practicing Consumer Law | Average Attorney Hourly Rate |
|---|---|
| <1 | 300 |
| 1-3 | 258 |
| 3-5 | 267 |
| 6-10 | 386 |
| 11-15 | 425 |
| 16-20 | 496 |
| 21-25 | 534 |
| 26-30 | 560 |
| 31-35 | 619 |
| 36-40 | 645 |
| 41+ | 450 |

Exhibit A
36

Appendix 3.  Statement of Peer Review by The National Association of Legal Fee
Analysis

The following page contains the NALFA statement of its peer review opinions of
the United States Consumer Law Attorney Fee Survey Report 2015-2016.



The National Association of Legal Fee Analysis (NALFA) is a 501(c)(6) non-profit professional association for the legal fee analysis field.  Our members provide a range of services on attorney fees and legal billing matters.  Courts and clients turn to us for expertise when attorney fees and expenses are at issue in large, complex cases.  NALFA members are fully qualified attorney fee experts, special fee masters, bankruptcy fee examiners, fee dispute mediators and legal bill auditors.

We have reviewed the follow data and methodology prior to publication.  We at NALFA support this hourly rate survey and the methodology contained within.  This survey was conducted with the utmost professionalism, with statistical integrity and reliability, and with detailed hourly rate data and survey information.  Indeed, this survey is the most comprehensive hourly rate survey for consumer lawyers in the U.S.

*Terry Jesse*

Terry Jesse, Executive Director
terry@thenalfa.org

# United States Consumer Law Attorney Fee Survey for 2015-2016

Attorneys in every state and the U.S. Territories took part in this national survey of Consumer Law attorneys and their law practice economics. The results of this exhaustive and peer reviewed survey continues the trend of being the most comprehensive since this continuous research work began in 1999.

This Survey Report publishes the results of the United States Consumer Law Attorney Fee Survey for 2015-2016. This Survey Report continues to be the only national survey of Consumer Law practitioners in the United States. Since the first Survey Report was published in 2000 the reported data has been used in more than 38 jurisdictions, including state and federal courts, the U.S. Court of Federal Claims, the U.S. Department of Justice, the U.S. Department of Labor, and the American Arbitration Association to determine reasonable attorney fee rates, resulting in more than $8 million in awards across the United States.

The Survey Report provides data for the entire United States, Washington D.C., Puerto Rico, the U.S. Virgin Islands, and 98 greater metropolitan areas. From Cape Coral, Florida to Eugene, Oregon, from San Diego, California to Hartford, Connecticut, and points in between, this survey provides hourly rates for attorneys and paralegals, average years in practice, and far more information, with a Table of Authorities updated to March 13, 2018.



The data published here will help the bench, the bar, and attorneys everywhere to understand the economics of practicing law in the Consumer Law field nationally.

In deciding a contested attorney fee motion in a fee-shifting case, Senior United States District Judge James C. Fox ruled that the *U.S. Consumer Law Attorney Fee Survey Report* was more persuasive than the National Law Journal's fee survey and the U.S. Attorney's Laffey Matrix in Consumer Law cases. *LaFountain, Jr v. Paul Benton Motors of North Carolina, LLC*, 2010 U.S. Dist. LEXIS 121631, 2010 WL 4457057 (E.D. NC, Nov. 5, 2010).

You can download your own free copy of this 408 page 2015-2016 Survey Report from NACA, NCLC, NACBA web sites, scan the QR code to the right, or by participating in the next survey. Go to: www.tinyurl.com/GetFeeSurvey



Practicing Attorney and Survey Editor, Ronald L Burdge