FILED
CLERK, U.S. DISTRICT COURT
11/12/2019
CENTRAL DISTRICT OF CALIFORNIA
BY: CW DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POVILAS KARCAUSKAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REGRESO FINANCIAL SERVICES LLC, et al.,<br><br>Defendants. | Case No. CV 15-9225 FMO (RAOx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered Plaintiff's Motion for Final Approval of the [Class Action] Settlement, (Dkt. 125, "Motion"), and Plaintiff's Uncontested Motion for an Award of Class Representative Incentive Payment and Attorney's Fees and Costs, (Dkt. 123, "Fees Motion"), and the oral argument presented during the final fairness hearing held on August 22, 2019, the court concludes as follows.

## **BACKGROUND**

On November 30, 2015, plaintiff Povilas Karcauskas ("plaintiff" or "Karcauskas") filed a class action complaint against defendants Regreso Financial Services LLC ("Regreso"); Goldsmith & Hull, APC ("Goldsmith & Hull"); and William I. Goldsmith ("Goldsmith") (collectively, "defendants"),[1] asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

---

[1] On March 1, 2018, the court granted the unopposed motion to dismiss plaintiff's individual and class claims as to Regreso. (See Dkt. 111, Court's Order of March 1, 2018, at 6). Thus, the reference to defendants shall be to Goldsmith & Hull and Goldsmith.

§§ 1692, et seq., and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civil Code §§ 1788.10, et seq. (See Dkt. 1, Complaint at ¶ 24). In pertinent part, plaintiff alleges that he received a debt collection letter: (1) incorrectly naming a creditor with no involvement in collecting the subject debt, (see id. at ¶ 18); and (2) seeking to collect a debt on behalf of an entity that was suspended by the California Secretary of State. (See id. at ¶¶ 12-14).

After extensive litigation, which included the filing of several motions, including a motion for class certification, (see Dkt.84), and motions to compel discovery, (see Dkts. 60-63), the parties settled the case in September, 2017. (See Dkt. 92, Status Report Re Settlement). The parties have defined the settlement class as "(i) all persons having an address within the state of California (ii) who were sent a communication from Defendants Goldsmith & Hull or William I. Goldsmith in the form of Exhibit A (attached to the Complaint) (iii) when a wage garnishment order had not been obtained (iv) to recover a debt incurred for personal, family, or household purposes (v) which was not returned undelivered by the United States Postal Service (vi) during the period of time one year prior to the filing of the Complaint through Preliminary Approval Date." (Dkt. 112-3, Settlement Agreement at § III.B.1; Dkt. 122, Court's Order of February 8, 2019, ("Preliminary Approval Order" or "PAO") at 14).

The relief available to the class, which involves approximately 1,072 class members, will come from a non-reversionary $20,000 settlement fund, which will be distributed on a pro rata basis. (See Dkt. 112-3, Settlement Agreement at § IV.B; Dkt. 122, PAO at 15). The settlement "amount equal[s] . . . approximately 1% of [Goldsmith & Hull and Goldsmith's] net worth[.]" (See Dkt. 112-3, Settlement Agreement at § IV.B; Dkt. 122, PAO at 15). Any unpaid sums will be distributed as a cy pres award to (a) the National Consumer Law Center and/or (b) the National Association of Consumer Advocates. (See Dkt. 112-3, Settlement Agreement at § IV.B). Defendants will separately pay plaintiff's attorney's fees and costs, subject to the court's approval, (see id. at § V), as well as the costs of the settlement administrator, not to exceed $10,000. (See id. at § VII).

On February 8, 2019, the court granted preliminary approval of the settlement, appointed First Class, Inc. ("First Class") as settlement administrator, and directed First Class to provide

notice to the class members. (See Dkt. 122, PAO at 21-22; Dkt. 120-1 (approved class Notice)). After the court issued its Preliminary Approval Order, First Class implemented the notice program approved by the court. (See Dkt. 124, Declaration of Bailey Hughes ("Hughes Decl.") at ¶ 5; Dkt. 122, PAO at 19-21 (approving notice program)). Specifically, on April 5, 2019, after checking and updating addresses via a National Change of Address search, First Class sent notice to 1,070 class members via U.S. Mail. (See Dkt. 124, Hughes Decl. at ¶¶ 3-5; see also Dkt. 122, PAO at 22; Dkt. 120-1 (approved Notice)). There were eight requests for exclusion and no objections. (See Dkt. 124, Hughes Decl. at ¶¶ 10-11). Given the low number of exclusions and the notices that were ultimately undeliverable, each class member will receive $19.94. (See Dkt. 125, Motion at 9).

Plaintiff now seeks: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) an incentive payment for plaintiff. (See Dkt. 125, Motion; Dkt. 123, Fees Motion).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule[2] 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992), who must examine the settlement for "overall fairness[.]" In re Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "The settlement must stand or fall in its entirety." Officers for Justice, 688 F.2d at 630.

In order to approve a settlement in a class action, the court must conduct a two-step

---

[2] All "Rule" references are to the Federal Rules of Civil Procedure.

3

inquiry.[3] First, it must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard).

In determining whether a settlement is fair, adequate, and reasonable, the court must weigh some or all of the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).

However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . . factors alone is not enough to survive appellate review." Bluetooth, 654 F.3d at 946 (emphasis in original). This is because, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." Id.; see Koby v. ARS Nat. Servs., Inc., 846 F.3d 1071, 1079 (9th Cir. 2017) ("When, as here, a class settlement is negotiated prior to formal class certification, there is an increased risk that the named plaintiffs and class counsel will breach the fiduciary obligations they owe to the absent class members."). District courts, therefore, also must determine "that the settlement is not the product of collusion among the negotiating parties." Bluetooth, 654 F.3d at 947 (internal quotation and alteration marks omitted). In making that determination, courts should look for signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement,

---

[3] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also assess whether CAFA's notice requirements have been met. See 28 U.S.C. § 1715(d). Here, defendants provided the CAFA Notice, (see Dkt. 121, Certificate of Service Re: Notice to Appropriate Federal and State Officials [] at ¶¶ 2 & Exh. A), and received no objections to the settlement from the state and federal officials that received the CAFA Notice. (See Dkt. 125-4, Joint Notice of Non-Receipt of Any Objection at ¶¶ 1-2).

or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds[;]" and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" Id. (internal quotation marks and citations omitted).

**DISCUSSION**

I.    FINAL APPROVAL OF CLASS SETTLEMENT.

    A.    <u>Class Certification</u>.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Dkt. 122, PAO at 6-13, 21). Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e). See, e.g., <u>Gonzalez v. BMC West, LLC</u>, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks omitted).

    B.    <u>Rule 23(c) Notice Requirements</u>.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

After undertaking the required examination, the court approved the form of the proposed class notice. (See Dkt. 122, PAO at 19-21; Dkt. 120-1 (approved Notice)). As discussed above, the notice program was implemented by First Class. (See Dkt. 124, Hughes Decl. at ¶¶ 3-9). Accordingly, based on its prior findings and the record before it, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the

class members' right to exclude themselves from the action, and their right to object to the proposed settlement. (See Dkt. 122, PAO at 19-21).

        C. <u>Whether the Class Settlement is Fair, Adequate and Reasonable</u>.

              1. **The Strength of Plaintiff's Case, and the Risk, Expense, Complexity, and Duration of Further Litigation**.

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964, 975 (internal quotation marks omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." Id. at 976.

Here, in granting preliminary approval of the settlement, the court recognized the "risks of continued litigation [were] significant" and that weighed against those risks, and coupled with the "costs and delay associated with continued litigation," the "benefits to the class" were within the range of reasonableness. (See Dkt. 122, PAO at 15-16). The settlement here affords class members monetary benefits in the face of various defenses to plaintiff's claims and defendant's net worth. (See id. at 15-16; Dkt. 125, Motion at 12-13); 15 U.S.C. § 1692k(a)(2)(B) (Recovery in FDCPA class actions is limited to $1,000 statutory damages for each named plaintiff, and the lesser of $500,000 or one percent of the net worth of the "debt collector" defendant); see, e.g., Schuchardt v. Law Office of Rory W. Clark, 2016 WL 232435, *10 (N.D. Cal. 2016) (holding that "net worth" for the purposes of the FDCPA means balance sheet net worth, not fair market net worth including goodwill) (citing Sanders v. Jackson, 209 F.3d 998, 1000 (7th Cir. 2000)); Harper v. Law Office of Harris & Zide LLP, 2017 WL 995215, *4 (N.D. Cal. 2017). Under the circumstances, the court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). In short, the court finds that this factor supports a finding that the settlement is fair, adequate, and reasonable.

    2.  **The Risk of Maintaining Class Action Status Through Trial**.

  In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Dkt. 122, PAO at 6-13, 21). In deciding whether to certify the class for settlement purposes, the court determined that the requirements of Rule 23 for settlement purposes have been met. (See id.); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]"). Nothing has been put forth to challenge or otherwise undermine the court's previous order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class."). Accordingly, this factor weighs in favor of approving the settlement.

    3.  **The Amount Offered in Settlement**.

  "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval of the settlement, the court concluded that the settlement benefits were fair, adequate, and reasonable in light of the litigation risks in the case. (See Dkt. 122, PAO at 13-16); see, e.g., Harper v. Law Office of Harris & Zide LLP, 2017 WL 995215,*4 (N.D. Cal. 2017) ("Each class member will receive $10.") (citing Schuchardt v. Law Office of Rory W. Clark, 314 F.R.D. 673, 684 (N.D. Cal. 2016) (approving class action settlement awarding $15.10 per class member "where Plaintiffs' potential recovery [was] limited by Defendant's more modest net worth.")); Calderon v. Wolf Firm, Inc., 2018 WL 6843725, *2 (C.D. Cal. 2018) (granting final approval to FDCPA/RFDCPA class action settlement in which class members would receive $15.66 each). Accordingly, this factor also weighs in favor of final approval.

    4.  **The Extent of Discovery Completed and the Stage of Proceedings**.

  "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 528. "A court is more likely to

approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Id. at 527 (internal quotation marks omitted). The court previously examined these factors at length, noting that the parties had engaged in "highly contested discovery," (see Dkt. 122, PAO at 14), and "thoroughly investigated and considered their own and the opposing parties' positions[,]" (id.), which enabled them to develop "a sound basis for measuring the terms of the settlement against the risks of continued litigation[.]" (Id.). In other words, the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions. See Nat'l Rural Telecomms., 221 F.R.D. at 527-28 (noting that parties' examination of the factual and legal bases of the disputed claims through completion of discovery "strongly militates in favor of the Court's approval of the settlement"); Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.") (internal quotation marks omitted). This factor also supports approval of the settlement.

        5.        **The Experience and Views of Counsel**.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Nat'l Rural Telecomms., 221 F.R.D. at 528 (internal quotation marks and citation omitted). Here, class counsel view the settlement as "fair, reasonable and adequate" and "in the best interests" of the class. (See Dkt. 125-1, Declaration of Robert Stempler in Support of Motion for Final Approval [] ("Stempler Decl.") at ¶ 7). The court has previously noted that class counsel are adequate. (See Dkt. 122, PAO at 10). Thus, this factor also supports approval of the settlement.

        6.        **The Presence of a Governmental Participant**.

There is no government participant in this matter. Accordingly, this factor is inapplicable. See Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *10, supplemented by 2011 WL

1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this factor inapplicable to the analysis).

### 7. The Reaction of Class Members to the Proposed Settlement.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecomms., 221 F.R.D. at 529. Here, the reaction of the class has been very positive. There were only eight requests for exclusion and no objections to the settlement. (See Dkt. 124, Hughes Decl. at ¶¶ 10-11). The lack of objections and limited requests for exclusion support approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval when only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt outs and no objections out of the 2,385 class members).

## II. ATTORNEY'S FEES, COSTS AND SERVICE AWARD.

The Settlement Agreement provides that defendants will pay class counsel $200,000 as attorney's fees and costs pursuant to the FDCPA and RFDCPA. (See Dkt. 112-3, Settlement Agreement at § V).

### A. Attorney's Fee Award.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As a fee-shifting statute, "[t]he FDCPA's statutory language makes an award of fees mandatory." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008) (internal quotation marks omitted). Class counsel seek fees using the lodestar method, which the court agrees is the proper method in this action. See Calderon, 2018 WL 6843725, at *4 (using lodestar method in FDCPA class action settlement).

Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1988). Once the lodestar has been determined, the "figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." Id.

Having reviewed class counsel's submission in connection with the Fees Motion, the court finds the $200,000 in requested attorney's fees and costs appropriate given the extensive work performed in this action, including the filing of a motion for class certification, and the prevailing rates in the community for lawyers of comparable skill, experience, and reputation. (See Dkt. 123, Fees Motion at 18-21 & Exh. A; Dkt. 123-1, Declaration of O. Randolph Bragg in Support of Plaintiff['s] Motion for an Award of Class Representative Incentive Payment and Attorney's Fees and Costs ("Bragg Decl.") at ¶¶ 17-21 & Exh. A (billing records); Dkt. 123-2, Declaration of Robert Stempler in Support of Plaintiff['s] Motion for an Award of Class Representative Incentive Payment and Attorney's Fees and Costs ("Stempler Fees Decl.") at ¶¶ 15-17 & Exh. 1 (billing and costs report)). Indeed, class counsel's actual lodestar in this action as of the filing of the Fees Motion was $361,080, (see Dkt. 123, Fees Motion at 8-10, 26; Dkt. 125, Motion at 10; Dkt. 123-1, Bragg Decl. at ¶ 19 (201.7 hours x $600 = $121,020); Dkt. 123-2 at ¶ 17 (400.1 hours x $600 = $240,060)), less than their actual requested award. In short, the requested attorney's fee award is fair and reasonable.[4]

B.    <u>Class Representative Service Award</u>.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton, 327 F.3d at 977; see Wren, 2011 WL 1230826, at *31 ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). Here, plaintiff requests that the court grant a service award in the amount of $5,000. (See Dkt. 123, Fees Motion

---

[4] Class counsel's costs of $5,012 are included in the $200,000 request. The court finds the costs incurred by class counsel to be reasonable.

at 15).

In its order granting preliminary approval of the settlement, the court undertook an examination of the fairness and adequacy of the service award at issue, applying the careful scrutiny required in this Circuit. (See Dkt. 122, PAO at 17-19); see also Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that a service award of $3,000 was reasonable and did not create a conflict of interest between named plaintiff and absent class members. (See Dkt. 122, PAO at 17-19). The court sees no reason to depart from its previous determination. Therefore, the court concludes that a service payment of $3,000 (see Dkt. 125, Motion at 10 (noting court's award of $3,000)), is fair and reasonable, and is hereby approved.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Final Approval of the [Class Action] Settlement **(Document No. 125)** is **granted** as set forth herein.

2. The court hereby grants final approval to the parties' Settlement Agreement (Document No. 112-3). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties shall perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

3. Plaintiff's Uncontested Motion for an Award of Class Representative Incentive Payment and Attorney's Fees and Costs **(Document No. 123)** is **granted** as set forth herein.

4. The following class is certified under Federal Rule of Civil Procedure 23(c) for settlement purposes: "(i) all persons having an address within the state of California (ii) who were sent a communication from Defendants Goldsmith & Hull or William I. Goldsmith in the form of Exhibit A (attached to the Complaint) (iii) when a wage garnishment order had not been obtained (iv) to recover a debt incurred for personal, family, or household purposes (v) which was not returned undelivered by the United States Postal Service (vi) during the period of time one year prior to the

filing of the Complaint through Preliminary Approval Date."

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6. Plaintiff Povilas Karcauskas shall be paid a statutory award of $2,000 and an incentive payment of $3,000 for a total award of $5,000 in accordance with the terms of the Settlement Agreement and this Order.

7. Class counsel shall be paid $200,000.00 in attorney's fees and costs in accordance with the terms of the Settlement Agreement.

8. The Claims Administrator, First Class, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

9. The court approves the designation of National Consumer Law Center and the National Association of Consumer Advocates as the cy pres beneficiaries pursuant to the Settlement Agreement.

10. All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

11. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

12. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

13. Judgment shall be entered accordingly.

Dated this 12th day of November, 2019.

/s/
Fernando M. Olguin
United States District Judge